UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

JOHN MARK MARINO, a/k/a
RONALD M. HUNTER,

      Debtor.

_____/

MARGARET J. SMITH, not individually but
As Chapter 7 Trustee of the estate of Debtor
John Mark Marino, a/k/a/ Ronald M. Hunter,

      Plaintiff,

vs.

GOLDEN SUMMIT INVESTORS GROUP,
LTD., EXTREME CAPITAL, LTD,
CODDINGTON FAMILY TRUST, DANIEL
DIRK CODDINGTON, individually,
DANIEL SCOTT CODDINGTON, individually,
LEWIS P. MALOUF, individually,
MARY-RUTH, LLC, DAVID GENECCO,
Individually, HIGHLAND
INVESTMENT PARTNERS, LLC,
AISHWARIYA ENTERPRISES, INC.,
VIVEK CHANDRAHASAN, individually,
VIEWPOINT SECURITIES, LLC,
SETH LEYTON, individually, ERWIN LAW
GROUP, P.C., JESSE ERWIN, individually,
STONEROCK CAPITAL GROUP, LLC,
MICHAEL COLUMBIA, individually, JOANNA I.
COLUMBIA (A/K/A JOANNA I. ORNOWSKA),
Individually, J.R. RICHARDSON INVESTMENTS,
JIMMY L. RICHARDSON, individually,
WILSHIRE ASSOCIATES, INC.,
FSC SECURITIES CORP.,
MARTIN NELSON & CO., INC, BARTLETT & CO., LLC
DOMINICK INVESTORS SERVICES, CORP.,
BMO NESBITT BURNS, RJ STEICHEN &CO.,
BAWA FINANCIAL LTD., JOHN ANDRES
MORRISON, individually, PAUL SHERMAN,

Case No. 12-32119-PGH

Chapter 7

Adversary No. _____

1

Individually, RAFAL BRENNER, individually,
SANDRA JOSEFA DELEON, individually,
MYKAEL MORGAN, individually, RON CORNFORTH,
Individually, VINCENT G. FARRIS CO., L.P.A.,
VINCENT G. FARRIS, individually, GREG STODGILL,
individually, IAN RUSSELL, individually, LECLAIR RYAN,
JOHN DOES #1-100,JANE DOES #1-100,
AND ABC COMPANIES #1-100

      Defendants,

_____/

## ADVERSARY COMPLAINT

Margaret J. Smith (the "Trustee"), not individually but as Chapter 7 Trustee of the bankruptcy estate of the Debtor, John Mark Marino, a/k/a/ Ronald M. Hunter ("Debtor"), files this Adversary Complaint ("Complaint") against defendants, GOLDEN SUMMIT INVESTORS GROUP, LTD., EXTREME CAPITAL, LTD, CODDINGTON FAMILY TRUST, DANIEL DIRK CODDINGTON, individually, DANIEL SCOTT CODDINGTON, individually, LEWIS P. MALOUF, individually, MARY-RUTH, LLC, DAVID GENECCO, Individually, HIGHLAND INVESTMENT PARTNERS, LLC, AISHWARIYA ENTERPRISES, INC., VIVEK CHANDRAHASAN, individually, VIEWPOINT SECURITIES, LLC, SETH LEYTON, individually, ERWIN LAW GROUP, P.C., JESSE ERWIN, individually, STONEROCK CAPITAL GROUP, LLC, MICHAEL COLUMBIA, individually, JOANNA I.COLUMBIA (A/K/A JOANNA I. ORNOWSKA), Individually, J.R. RICHARDSON INVESTMENTS, JIMMY L. RICHARDSON, individually, WILSHIRE ASSOCIATES, INC., FSC SECURITIES CORP., MARTIN NELSON & CO., INC, BARTLETT & CO., LLC DOMINICK INVESTORS SERVICES, CORP., BMO NESBITT BURNS, RJ STEICHEN &CO., BAWA FINANCIAL LTD., JOHN ANDRES MORRISON, individually, PAUL SHERMAN,Individually, RAFAL

BRENNER, individually, SANDRA JOSEFA DELEON, individually, MYKAEL MORGAN, individually, RON CORNFORTH, individually, VINCENT G. FARRIS CO., L.P.A., VINCENT G. FARRIS, individually, GREG STODGILL, individually, IAN RUSSELL, individually, LECLAIR RYAN, JOHN DOES #1-100,JANE DOES #1-100,  AND ABC COMPANIES #1-100, to avoid and recover avoidable transfers and for other relief pursuant to §§ 542, 544, 547, 548 and 550 of Title 11 of the United States Code (the "Code"), Chapter 726 of the Florida Statutes and state common law, Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure and federal common law and alleges:

## PARTIES, JURISDICTION & VENUE

1.      The Debtor is a Florida resident and is *sui juris*.

2.      The Trustee is the duly appointed and acting Chapter 7 Trustee for the benefit of the creditors of the estate.

3.      Defendant Golden Summit Investors Group, Ltd. is a Nevada corporation with its principal place of business in Colorado that had accounts with Defendant Apex Clearing Corp. (f/k/a Penson Financial Services, Inc.) through Defendant Viewpoint Securities, LLC.

4.      Defendant Extreme Capital LLC is a Nevada business entity with its principal place of business in Colorado.

5.      Defendant Coddington Family Trust is a trust that was formed in and has its principal place of business in the state of Colorado; Defendants Daniel Scott Coddington and Daniel Dirk Coddington are the trustees of the Coddington Family Trust.

6.      Defendant Daniel Dirk Coddington is a resident of the state of Colorado. He is the father of Defendant Daniel Scott Coddington, is a trustee of the Coddington Family Trust and has served as an officer and/or director of Defendant Extreme Capital LLC.

7.     Defendant Daniel Scott Coddington is a resident of the state of Colorado. He is the son of Defendant Daniel Dirk Coddington, is a trustee of Defendant Coddington Family Trust, was the vice president, treasurer and director of Defendant Golden Summit Investors Group Ltd, and was an officer and/or director of Defendant Extreme Capital LLC.

8.     Defendant Lewis P. Malouf is a resident of the state of California and served as a vice president of Defendant Extreme Capital LLC.

9.     Defendant Mary Ruth LLC is a New York limited liability company with its principal place of business in New York.

10.     Upon information and belief, Defendant David Genecco is a resident of the state of New York and served as a principal of Defendant Mary Ruth LLC.

11.     Defendant Progressive Development Associates LLC is a New York limited liability company with its principal place of business in the state of Pennsylvania.

12.     Defendant Highland Investment Partners LLC is an Ohio limited liability company with its principal place of business in the state of Ohio.

13.     Defendant Aishwariya Enterprises, Inc. is a Nevada corporation with its principal place of business in the state of California and had accounts through Defendant Apex Clearing Corp. (f/k/a Penson Financial Services, Inc.).

14.     Upon information and belief Defendant Vivek Chandrahasan is a resident of the state of Nevada and was president, secretary, treasurer, and director of Defendant Aishwariya Enterprises, Inc.

15.     Defendant Viewpoint Securities LLC is a Delaware limited liability company with its principal place of business in California that provided securities brokerage services.

Viewpoint withdrew its registration as a broker-dealer with the Securities and Exchange Commission, effective December 2012.

16.     Defendant Seth Leyton is a resident of the state of California. He was a registered representative, chief executive officer, managing member and chief compliance officer of Defendant Viewpoint Securities. On approximately October 11, 2013 FINRA barred Defendant Leyton from association with any FINRA member in any capacity.

17.     Defendant Erwin Law Group, P.C. is a New York professional corporation with its principal place of business in the state of New York. Defendant Jesse Erwin is the principal of Defendant Erwin Law Group, P.C.

18.     Defendant Jesse Erwin is an attorney licensed to practice law in the state of New York. According to Complaint filed by the Securities Exchange Commission in the United States District Court for the District of Colorado on December 12, 2013, Defendant Erwin is a resident of the state of Nevada. Defendant Erwin was at all relevant times the sole principal of Defendant Erwin Law Group, P.C.

19.     Defendant Stonerock Capital Group, LLC was a Nevada limited liability company with its principal place of business in Arizona. Defendant Michael Columbia was a managing member, chief executive officer, chairman and executive vice president of Defendant Stonerock. Defendant Joanna I. Columbia (a/k/a Joanna I. Ornowska) was a board member and chief executive officer of Defendant Stonerock.

20.     Defendant Michael Columbia was a resident of the state of Arizona. He is now incarcerated in a federal penitentiary in the state of Illinois. He was a managing member, chief executive officer, chairman and executive vice president of Defendant Stonerock Capital Group, LLC.

21.     Defendant Joanna I. Columbia (a/k/a Joanna I. Ornowska) is a resident of the state of Illinois and is the wife of Defendant Michael Columbia. She was a board member and chief executive officer of Defendant Stonerock Capital Group, LLC.

22.     On information and belief, Defendant J.R. Richardson Investments is a California business entity and its principal place of business is located in the state of California.

23.     Defendant Jimmy L. Richardson is a resident of the state of California and is the principal of Defendant J.R. Richardson Investments.

24.     Defendant Wilshire Associates, Inc. is a California company with its principal place of business in the state of California.

25.     Defendant FSC Securities Corp. is a Delaware corporation with its principal place of business in the state of Tennessee.

26.     Defendant Martin Nelson & Co., Inc. is a Washington company with its principal place of business in the state of Washington.

27.     Defendant Bartlett & Co., LLC is an Ohio limited liability company with its principal place of business in the state of Ohio.

28.     Defendant Dominick Investors Services, Corp. is a New York corporation with its principal place of business in the state of New York.

29.     Defendant BMO Nesbitt Burns is full service investment firm that is a part of BMO Financial Group. Defendant BMO Nesbitt Burns's principal place of business is located in Toronto, Ontario, Canada.

30.     Defendant RJ Steichen & Co. was a Minnesota company that was acquired in 2000 by Miller Johnson Steichen Kinnard, Inc., a Minnesota company; its principal place of business is in the state of Minnesota.

31.     Defendant BAWA Financial Ltd. is, on information and belief, and English limited liability company with its principal place of business in Woodford Green, Essex, United Kingdom. Defendant BAWA had an account with Defendant Apex Clearing Corporation (f/k/a Penson Financial Services, Inc.) through Defendant Viewpoint Securities, LLC. Defendants John Andres Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa DeLeon were principals of Defendant BAWA.

32.     On information and belief, Defendant John Andres Morrison is a resident of the United Kingdom and currently resides in England. He was a principal of Defendant BAWA Financial Ltd.

33.     On information and belief, Defendant Paul Sherman is a resident of the United Kingdom and currently resides in England. He was a principal of Defendant BAWA Financial Ltd.

34.     On information and belief, Defendant Rafal Brenner is a resident of the United Kingdom and currently resides in England. Defendant was a principal of Defendant BAWA Financial Ltd.

35.     On information and belief, Defendant Sandra Josefa DeLeon is a resident of the United Kingdom and currently resides in England. She was a principal of Defendant BAWA Financial Ltd.

36.     On information and belief, Defendant Mykael Morgan is a resident of the state of California.

37.     On information and belief, Defendant Ron Cornforth is a resident of the United Kingdom and currently resides in England.

38.     Defendant Vincent G. Farris Co, L.P.A. is an Ohio limited professional association. Defendant Vincent G. Farris is a principal/partner of Defendant Vincent G. Farris Co., L.P.A.

39.     Defendant Vincent G. Farris is a resident of Ohio and is an attorney licensed to practice law in the state of Ohio. He is the principal/partner of Defendant Vincent G. Farris Co., L.P.A.

40.     On information and belief, Defendant Greg Stodghill is a resident of the state of Indiana.

41.     Defendant Ian Russell is a resident of the United Kingdom and resides in England.

42.     Defendant LeClair Ryan is a Virginia corporation doing business in, among other places, Washington, D.C. as LeClairRyan, a professional corporation filing in the District of Columbia.

43.     Defendants John Does #1-100 and Jane Does #1-100, on information and belief, are the alleged beneficial owners of record of the misappropriated and stolen subject assets including the relevant Collateralized Mortgage Obligations and/or other securities that are the subject of the Complaint, and received interest payments that were generated and disbursed pursuant to the terms of the contracts and securitization papers that govern the payment and disbursement terms and conditions of the relevant securities.

44.     Defendants ABC Companies #1-100, on information and belief, are the alleged beneficial owners of record of the misappropriated and stolen subject assets including the relevant Collateralized Mortgage Obligations and/or other securities that are the subject of the Complaint, and received interest payments that were generated and disbursed pursuant to the

terms of the contracts and securitization papers that govern the payment and disbursement terms and conditions of the relevant securities.

45. This Court possess "core" jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H)

46. Venue properly lies before this Court pursuant to 28 U.S.C. §§ 1408, 1409.

47. All conditions precedent to the bringing of this action have occurred, been waived by applicable Defendants, or have been satisfied by the Trustee.

## RELEVANT FACTUAL BACKGROUND

48. Prior to January 2010, John Marino was at the center of a large-scale fraud that was intended to unlawfully bilk innocent participants of their money or securities acquired by Marino with their funds, namely Collateralized Mortgage Obligations ("CMOs"). Greg Stodghill, Vivek Chandrahasan, Ian Russell and others worked with Marino to affect the fraud through a High Yield Investment Program scheme. Many of these innocent participants are creditors in the Estate of John Mark Marino, a/k/a Ronald M. Hunter. Marino acted through JM International Commercial Consulting, Inc. ("JMICCI") and Marino, White, O'Farrell & Gonzalez, Attorneys and Solicitors. ("Marino Attorneys"). Upon information and belief, Marino improperly sent creditors' funds to Stodghill and Russell.

49. Utilizing funds of several creditors, Marino acquired $3B Original Face Value ("OFV") of CUSIP 362461AP6 and $23B OFV of CUSIP 59023BAYO that were held in a business brokerage account at Andrew-Garrett, Inc. These CMOs were purchased for creditors of this bankruptcy estate. By Assignment of Assets Agreement dated January 19, 2010, JMICCI assigned these CMOs to Longhorn Properties, LLC ("Longhorn"), also a creditor. However, before Longhorn could gain control of those CMOs, JMICCI delivered those CMOs to

Aishwariya Enterprises, Inc. and its owner Vivek Chandrahasan in a brokerage account at EKN Financial Services without the knowledge and consent of Longhorn.

50.    While under Aishwariya/Chandrahasan's control, during the period January through September 2010 at EKN, Chandrahasan wrongfully converted more than $600,000 of the CMO interest payments to his own use without Longhorn's permission.

51.    After months of searching for the JMICCI/Marino CMOs assigned to Longhorn, Tommy Hammond located these CMOs at EKN and gained control of them from Aishwariya. Other CMOs were also discovered from creditors including those of C-4 Worldwide Corporation ($500M Original Face Value ("OFV") of CUSIP 36246LAP6 and $501M OFV of CUSIP 20173MBA7 and Seaward Investments, LLC ($1B OFV of CUSIP 20173MBA7). There were a total of $7,301B OFV of CMOs consisting of the following:

- $2.561B OFV of CUSIP 36246LAP6;

- $2.3B OFV of CUSIP 59023BAYO;

- $1.0B OFV of CUSIP 20173MBA7;

- $439M OFV of CUSIP 22545BAW1;

- $500M OFV of CUSIP 36246LAP6; and

- $501M OFV of CUSIP 20173MBA7.

52.    Thereafter these CMOs were transferred to Viewpoint Securities brokerage accounts at Penson Financial Services, Inc. ("Penson") in the names of Aishwariya and C-4, on or about October 29, 2010. These CMOs were transferred on November 1, 2010 to a Golden Summit Investors Group, Ltd. ("Golden Summit"), Viewpoint Securities, LLC ("Viewpoint") brokerage account at Penson Financial Services Corporation ("Penson") without value and as part of a fraud conducted by Golden Summit, Extreme Capital, Ltd. ("Extreme"). Daniel

Coddington, Scott Coddington, Erwin Law Group, P.C. ("Erwin Law"), Jesse Erwin, Lewis Malouf, Viewpoint, Seth Leyton, Penson, StoneRock Capital Group LLC ("StoneRock"), Michael Columbia, Joanna Columbia, J.R. Richardson Investments, Jimmy L. Richardson, BAWA Financial Ltd. ("BAWA"), John Andres Morrison, Paul Sherman, Rafal Brenner, Mykael Morgan and Ron Cornforth.

53.    The Golden Summit fraud also ensnared Geisco FNF members who were fraudulently induced to wire at least $8,657,920 into a Golden Summit bank account and Erwin Law trust account during October and November 2010. Golden Summit, Dan Coddington, Scott Coddington, Erwin Law and Erwin fraudulently converted the money to pay themselves and for their benefit along with purchasing more CMOs. These additional CMOs included but are not limited to the following:

- $1B OFV of CUSIP 46224AAO on or about November 12, 2010;

- $1B OFV of CUSIP 46224AAO on or about November 19, 2010;

- $1.5B OFV of CUSIP 59025KBD3 on or about November 24, 2010;

- $1B OFV of CUSIP 462264AAO on or about November 29, 2010;

- $350M OFV of CUSIP 462264AAO on or about November 29, 2010;

- $1B OFV of CUSIP 59025KBD3 on or about December 3, 2010;

- $212M OFV of CUSIP 36246LAP6 on or about December 10, 2010;

- $4.284 OFV of CUSIP 462264AAO on or about April 21 and 25, 2010; and

- $4B OFV of CUSIP 44985AA1 on or about April 25, 2010.

54.    Mykael Morgan and Ron Cornforth recruited the owners of the CMOs along with Geisco FNF members to participate in the Golden Summit and Extreme High Yield Investment

Program scheme. Upon information and belief they received proceeds that belong to the creditors.

55.    In furtherance of the scheme, Dan Coddington directed the following CMOs to be transferred for <u>no value</u> to the StoneRock brokerage account at Second Market and Penson on December 7, 2010:

- $1,501,656,137 OFV of CUSIP 20173MBA7;

- $437M OFV of CUSIP 22545BAW1;

- $2,061B OFV of CUSIP 36246LAP6;

- $2,250B OFV of CUSIP 462264AAO;

- $2.3B OFV of CUSIP 59023BAY); and

- $1.5 OFV of CUSIP 59025KBO3.

56.    During the times that Golden Summit and StoneRock held the CMOs, Dan Coddington, Michael Columbia and Joanna Columbia transferred the interest paid monthly on the CMOs to themselves and used these stolen funds for personal expenses.

57.    In furtherance of the fraud scheme, StoneRock transferred $1B OFV of CUSIP 36246LAP6 to Mary-Ruth for insufficient or no consideration. Mary-Ruth and David Geneco transferred the CMO to a Golden Summit brokerage account at Viewpoint and Penson for insufficient consideration and took the monthly interest payments of the CMO. This CMO is currently under the control of the Trustee.

58.    In furtherance of the fraud scheme, StoneRock transferred the stolen CMOs to certain third parties as follows:

- $2B OFV of CUSIP 462264AAO on or about December 14, 2010 to Steichen (RJ) & Co. for insufficient consideration;

- $1.5 OFV of CUSIP 59023BAYO on or about December 21, 2010;

- $250M OFV of CUSIP 36246LAP6 on or about January 28, 2011;

- $350M OFV of CUSIP 59025KBD3 on or about January 28, 2011 to Highland Investment Partners for insufficient consideration;

- $150M OFV of CUSIP 59025KBD3 on or about February 4, 2011;

- $1B OFV of CUSIP 59023BAYO on or about February 18, 2011 to Steichen (RJ) & Co. for insufficient consideration;

- $1B OFV of CUSIP 22545BAW1 on or about February 3, 2011;

- $1B OFV of CUSIP 59025KBD3 on or about February 4, 2011;

- $1B OFV of CUSIP 36246LAP6 on or about March 3, 2011 to Mary-Ruth for insufficient consideration;

- $750M OFV of CUSIP 36246LAP6 on or about March 22, 2011 to Dominick Investment Service Corp. for insufficient consideration;

- $273M OFV of CUSIP 36246LAP6 on or about March 24, 2011 to Dominick Investment Service Corp. for insufficient consideration;

- $1B OFV of CUSIP 20173MBA7 on or about March 30, 2011 to FSC Securities Corporation for insufficient consideration;

- $250M OFV of CUSIP 462264AAO on or about March 31, 2011;

- $300M OFV of CUSIP 59023BAYO on or about April 12, 2011 to Bartlett & Co. for insufficient consideration;

- $250M OFV of CUSIP 22545BAW1 on or about July 27, 2011 to Wilshire and Associates, Inc. for insufficient consideration;

- $501M OFV of CUSIP 20173MBA7 on or about July 27, 2011;

- $189M OFV of CUSIP 22545BAW1 on or about July 28, 2011 to Wilshire and Associates, Inc. for insufficient consideration; and

- $656,137,000 OFV of CUSIP 20173MBA7 on an unknown date.

59.     In furtherance of the scheme, BAWA, John Andres Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa Deleon received $4,224B OFV of CUSIP 462264AAO and $4B OFV of CUSIP 44985FAA1 from Golden Summit at its brokerage account at Viewpoint and

Penson on or about May 4, 2011. Then on July 5, 2011, they transferred these CMOs for no value to other accounts and closed its brokerage account at Viewpoint and Penson.

60.     In furtherance of the Golden Summit fraud, Dan Coddington and Lew Malouf as Extreme induced Financial Services Group LLC ("Financial Services") to transfer $1B OFV of CUSIP 462264AAO into the Golden Summit brokerage account at Viewpoint and Penson on June 14, 2011 for no value exchanged. Thereafter, Coddington and Malouf received at least $53,867 in interest payments from Financial Services' CMO. On or about October 10, 2011, Golden Summit, Dan Coddington and Malouf transferred the CMO to a third party for insufficient or no consideration and without the knowledge and consent of Financial Services.

61.     In furtherance of the fraud, Dan Coddington misappropriated approximately $3M of creditors' funds, CMO interest payments and payments from Columbia from the liquidation of CMOs transferred to StoneRock.

62.     Erwin and Erwin Law misappropriated at least $800,000 of creditors' funds, most of which he transferred directly from the Erwin Law trust account.

63.     Malouf received approximately $77,000 in misappropriated funds of creditors.

64.     Leyton received approximately $86,000 in misappropriated creditors' funds and at least $45,000 from the improper sale of the creditors' CMOs.

65.     Michael and Joanna Columbia misappropriated approximately $3.4M in proceeds from the liquidation of the above described CMOs and taking for their personal use the CMO interest payments between December 2010 and August 2011.

66.     Coddington Family Trust received no less than $945,000 of creditors' funds from Extreme and Golden Summit accounts for which it provided no consideration.

67.     Scott Coddington received at least $640,000 of creditors' funds.

68.     Farris Co. and Farris received approximately $625,000 of creditors' funds from Golden Summit and $40,000 from Erwin Law trust account for which neither provided any consideration for the funds they received.

69.     Jimmy Richardson assisted the Columbias' efforts to acquire, liquidate and transfer the CMOs set out above. For this he received creditors' funds for which he provided no consideration.

70.     In furtherance of the scheme, the CMOs were transferred to third parties for insufficient consideration who received interest payments for the CMOs and then transferred the CMOs on to other third parties continuing up to the present.

71.     In the spring and summer of 2011, LeClair Ryan, a law firm purportedly retained by Golden Summit, became involved with the transactions alleged above and others. An attorney for LeClair Ryan, Robert Fletcher, wrote at least two letters on behalf of Golden Summit to representatives of SouthCom, Geisco and Longhorn claiming that efforts were underway to obtain the CMOs and assets and return them to the original investors. Golden Summit, with the assistance of LeClair Ryan, represented that the CMOs had somehow been the subject of a civil judgment in the United Kingdom and a second civil action in a British court involving an entity known as StoneRock Capital in England. They assured SouthCom and Geisco that the CMOs would be re-obtained and returned. However, these stories were no more than a ruse, a series of lies to lull SouthCom, Geisco and Longhorn that Golden Summit and LeClair Ryan were either working to ensure that the investment program paid off or that the investments were returned without harm to any party. However, all of these communications were simply stringing SouthCom, Geisco members and the Longhorn group along and inducing them to allow Golden Summit to maintain control of their assets and not take action to take them back.

72.    In October of 2011, LeClair Ryan even presented bogus settlement agreements to SouthCom, Geisco and Longhorn, which representatives of these entities signed in reliance upon LeClair Ryan and Golden Summit's representations that they would receive their paid in contributions back. Golden Summit and LeClair Ryan never complied with the agreements, which were just another part of the fraud.

### Count I: Alter Ego/Corporate Veil Piercing
### (Against Defendants Extreme Capital Ltd, Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf)

73.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

74.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants the Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf, and Defendant Extreme Capital Ltd., which are alter egos of each other.

75.    As set forth above Defendant Extreme Capital Ltd. has no corporate existence or purpose that is legitimate or lawful.

76.    Defendant Extreme Capital Ltd. was formed solely as an instrumentality for Defendants the Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

77.    Because the Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf formed and operated Defendant Extreme Capital Ltd. for an illegal purpose, and because Defendant Extreme Capital Ltd has no legitimate or separate

corporate existence, the separate existence of Defendant Extreme Capital Ltd should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding the Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf liable for all debts owed by Defendant Extreme Capital Ltd., ordering all of Extreme Capital Ltd's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count II: Alter Ego/Corporate Veil Piercing
### (Against Defendants Mary-Ruth LLC and David Genecco)

78.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

79.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants David Genecco and Defendant Mary-Ruth LLC, which are alter egos of each other.

80.     As set forth above Defendant Mary Ruth LLC has no corporate existence or purpose that is or ever was legitimate or lawful.

81.     Defendant Mary-Ruth LLC was formed solely as an instrumentality for Defendant David Genecco to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

82.     Because Defendant David Genecco formed and operated Defendant Mary-Ruth LLC for an illegal purpose, and because Defendant Mary Ruth, LLC has no legitimate or separate corporate existence, the separate existence of Defendant Mary-Ruth LLC should be wholly disregarded.

17

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant David Genecco liable for all debts owed by Defendant Mary-Ruth LLC, ordering all of Defendant Mary-Ruth LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count III: Alter Ego/Corporate Veil Piercing
**(Against Defendants Aishwariya Enterprises, LLC and Vivek Chandrahasan)**

83.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

84.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Vivek Chandrahasan and Defendant Aishwariya Enterprises, LLC, which are alter egos of each other.

85.     As set forth above Defendant Aishwariya Enterprises, LLC has no corporate existence or purpose that is legitimate or lawful.

86.     Defendant Aishwariya Enterprises, LLC was formed solely as an instrumentality for Defendant Vivek Chandrahasan to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

87.     Because Defendant Vivek Chandrahasan formed and operated Defendant Aishwariya Enterprises, LLC for an illegal purpose, and because Defendant Aishwariya Enterprises, LLC has no legitimate or separate corporate existence, the separate existence of Defendant Aishwariya Enterprises, LLC should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Vivek Chandrahasan liable for all debts owed by Defendant

Aishwariya Enterprises, LLC, ordering all of Defendant Aishwariya Enterprises, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count IV: Alter Ego/Corporate Veil Piercing
### (Against Defendants Viewpoint Securities LLC and Seth Leyton)

88.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

89.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Seth Leyton and Defendant Viewpoint Securities, LLC, which are alter egos of each other.

90.     As set forth above Defendant Viewpoint Securities, LLC has no corporate existence or purpose that is legitimate or lawful.

91.     Defendant Viewpoint Securities, LLC was formed solely as an instrumentality for Defendant Seth Leyton to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

92.     Because Defendant Seth Leyton formed and operated Defendant Viewpoint Securities, LLC for an illegal purpose, and because Defendant Viewpoint Securities, LLC has no legitimate or separate corporate existence, the separate existence of Defendant Viewpoint Securities, LLC should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Seth Leyton liable for all debts owed by Defendant Viewpoint Securities, LLC, ordering all of Defendant Viewpoint Securities, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count V: Alter Ego/Corporate Veil Piercing
### (Against Defendants Erwin Law Group, P.C. and Jesse Erwin)

93.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

94.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Jesse Erwin and Defendant Erwin Law Group, P.C., which are alter egos of each other.

95.     As set forth above Defendant Erwin Law Group, P.C. has no corporate existence or purpose that is legitimate or lawful.

96.     Defendant Erwin Law Group P.C. was formed solely as an instrumentality for Defendant Jesse Erwin to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

97.     Because Defendant Jesse Erwin formed and operated Defendant Erwin Law Group, P.C. for an illegal purpose, and because Defendant Erwin Law Group, P.C. has no legitimate or separate corporate existence, the separate existence of Defendant Eriwn Law Group, P.C. should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Jesse Erwin liable for all debts owed by Defendant Erwin Law Group, P.C., ordering all of Defendant Erwin Law Group P.C.'s assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count VI: Alter Ego/Corporate Veil Piercing
**(Against Defendants Stonerock Capital Group, LLC, Michael Columbia and Joanna I. Columbia, (a/k/a Joanna I. Ornowska))**

98.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

99.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Michael Columbia, Joanna I. Columbia and Defendant Stonerock Capital Group, LLC, which are alter egos of each other.

100.     As set forth above Defendant Stonerock Capital Group, LLC has no corporate existence or purpose that is legitimate or lawful.

101.     Defendant Stonerock Capital Group, LLC was formed solely as an instrumentality for Defendants Michael and Joanna Columbia to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

102.     Because Defendants Michael and Joanna Columbia formed and operated Defendant Stonerock Capital Group, LLC for an illegal purpose, and because Defendant Stonerock Capital Group, LLC has no legitimate or separate corporate existence, the separate existence of Defendant Stonerock Capital Group, LLC should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendants Michael and Joanna Columbia liable for all debts owed by Defendant Stonerock Capital Group, LLC, ordering all of Defendant Stonerock Capital Group, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

<u>Count VII: Alter Ego/Corporate Veil Piercing</u>
**(Against Defendants J.R. Richardson Investments and Jimmy L. Richardson)**

103.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

104.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Jimmy L. Richardson and Defendant J.R. Richardson Investments, which are alter egos of each other.

105.    As set forth above Defendant J.R. Richardson Investments has no corporate existence or purpose that is legitimate or lawful.

106.    Defendant J.R. Richardson Investments was formed solely as an instrumentality for Defendant Jimmy L. Richardson to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

107.    Because Defendant Jimmy L. Richardson formed and operated Defendant J.R> Richardson Investments for an illegal purpose, and because Defendant J.R. Richardson Investments has no legitimate or separate corporate existence, the separate existence of Defendant J.R. Richardson Investments should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Jimmy L. Richardson liable for all debts owed by Defendant J.R. Richardson Investments, ordering all of Defendant J.R. Richardson Investments' assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count VIII: Alter Ego/Corporate Veil Piercing
**(Against Defendants BAWA Financial Ltd, John Andres Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa DeLeon)**

108.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

109.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants John Andres Morrison, Paul Sherman, Rafal Brenner, Sandra Josefa DeLeon and Defendant BAWA Financial Ltd, which are alter egos of each other.

110.    As set forth above Defendant BAWA Financial Ltd has no corporate existence or purpose that is legitimate or lawful.

111.    Defendant BAWA Financial Ltd was formed solely as an instrumentality for Defendants John Andres Morrison, Paul Sherman, Rafal Brenner, and Sandra Josefa DeLeon to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

112.    Because Defendants John Andres Morrison, Paul Sherman, Rafal Brenner, and Sandra Josefa DeLeon formed and operated Defendant BAWA Financial Ltd for an illegal purpose, and because Defendant BAWA Financial Ltd has no legitimate or separate corporate existence, the separate existence of Defendant BAWA Financial Ltd should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendants John Andres Morrison, Paul Sherman, Rafal Brenner, and Sandra Josefa DeLeon liable for all debts owed by Defendant BAWA Financial Ltd ordering all

of Defendant BAWA Financial Ltd assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### COUNT IX: Avoidance of Fraudulent Transfers Pursuant to
### 11 U.S.C. §§ 548 and/or § 726.105, *Florida Statutes*
### (Against All Defendants)

113.   The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-72 of the Complaint as though fully set forth herein.

114.   The transfers set forth in paragraphs 1-72 constitute Fraudulent Transfers within the ambit and meaning of 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes* and are subject to being set-aside and recovered by the Trustee for the benefit of the Marino bankruptcy estate and its' creditors.

Wherefore, the Trustee respectfully requests entry of judgment against all Defendants, setting-aside the transfers described hereinabove as fraudulent transfers and ordering the turnover to the bankruptcy estate of the subject CMOs in accordance with 11 U.S.C.  §§ 542, 543, 544, 548 and 550 and applicable law.

**Dated: July 17, 2015.**                    Respectfully submitted,


*/s/ Steven S. Newburgh*
Steven S. Newburgh
Florida Bar No. 348619

SACHS SAX CAPLAN, P.L.
6111 Broken Sound Parkway NW
Suite 200
Boca Raton, Florida 33487
Telephone: (561) 994-4499
Email: snewburgh@ssclawfirm.com
***Counsel for Chapter 7 Trustee,***
***Margaret J. Smith***