UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

JOHN MARK MARINO, a/k/a
RONALD M. HUNTER,

      Debtor.

_____/

MARGARET J. SMITH, not individually but
As Chapter 7 Trustee of the estate of Debtor
John Mark Marino, a/k/a/ Ronald M. Hunter,

      Plaintiff,

vs.

GOLDEN SUMMIT INVESTORS GROUP,
LTD., EXTREME CAPITAL, LTD,
CODDINGTON FAMILY TRUST, DANIEL
DIRK CODDINGTON, individually,
DANIEL SCOTT CODDINGTON, individually,
LEWIS P. MALOUF, individually,
MARY-RUTH, LLC, DAVID GENECCO,
Individually, HIGHLAND
INVESTMENT PARTNERS, LLC,
AISHWARIYA ENTERPRISES, INC.,
VIVEK CHANDRAHASAN, individually,
VIEWPOINT SECURITIES, LLC,
SETH LEYTON, individually, ERWIN LAW
GROUP, P.C., JESSE ERWIN, individually,
STONEROCK CAPITAL GROUP, LLC,
MICHAEL COLUMBIA, individually, JOANNA I.
COLUMBIA (A/K/A JOANNA I. ORNOWSKA),
Individually, J.R. RICHARDSON INVESTMENTS,
JIMMY L. RICHARDSON, individually,
WILSHIRE ASSOCIATES, INC.,
FSC SECURITIES CORP.,
MARTIN NELSON & CO., INC,
DOMINICK INVESTORS SERVICES, CORP.,
BMO NESBITT BURNS,
BAWA FINANCIAL LTD., JOHN ANDREAS
MORRISON, individually, PAUL SHERMAN,

Case No. 12-32119-PGH

Chapter 7

Adversary No. 15-01466-PGH

1

**Individually, RAFAL BRENNER, individually,**
**SANDRA JOSEFA DELEON, individually,**
**MYKAEL MORGAN, individually, RON CORNFORTH,**
**Individually, VINCENT G. FARRIS CO., L.P.A.,**
**VINCENT G. FARRIS, individually, GREG STODGILL,**
**individually, IAN RUSSELL, individually, LECLAIR RYAN,**
**JOHN DOES #1-100,JANE DOES #1-100,**
**AND ABC COMPANIES #1-100**

      **Defendants,**

_____/

## FIRST AMENDED ADVERSARY COMPLAINT

Margaret J. Smith (the "Trustee"), not individually but as Chapter 7 Trustee of the bankruptcy estate of the Debtor, John Mark Marino, a/k/a/ Ronald M. Hunter ("Debtor"), files this First Amended Adversary Complaint ("Complaint") against Defendants, GOLDEN SUMMIT INVESTORS GROUP, LTD., EXTREME CAPITAL, LTD, CODDINGTON FAMILY TRUST, DANIEL DIRK CODDINGTON, individually, DANIEL SCOTT CODDINGTON, individually, LEWIS P. MALOUF, individually, MARY-RUTH, LLC, DAVID GENECCO, Individually, HIGHLAND INVESTMENT PARTNERS, LLC, AISHWARIYA ENTERPRISES, INC., VIVEK CHANDRAHASAN, individually, VIEWPOINT SECURITIES, LLC, SETH LEYTON, individually, ERWIN LAW GROUP, P.C., JESSE ERWIN, individually, STONEROCK CAPITAL GROUP, LLC, MICHAEL COLUMBIA, individually, JOANNA I.COLUMBIA (A/K/A JOANNA I. ORNOWSKA), Individually, J.R. RICHARDSON INVESTMENTS, JIMMY L. RICHARDSON, individually, WILSHIRE ASSOCIATES, INC., FSC SECURITIES CORP., MARTIN NELSON & CO., INC, LLC, DOMINICK INVESTORS SERVICES, CORP., BMO NESBITT BURNS, BAWA FINANCIAL LTD., JOHN ANDREAS MORRISON, individually, PAUL SHERMAN, Individually, RAFAL BRENNER, individually, SANDRA JOSEFA DELEON, individually, MYKAEL MORGAN, individually, RON CORNFORTH,

2

individually, VINCENT G. FARRIS CO., L.P.A., VINCENT G. FARRIS, individually, GREGORY P. STODGILL, individually, IAN RUSSELL, individually, , JOHN DOES #1-100,JANE DOES #1-100,  AND ABC COMPANIES #1-100, to avoid and recover avoidable transfers and for other relief pursuant to §§ 542, 544, 547, 548 and 550 of Title 11 of the United States Code (the "Code"), Chapter 726 of the Florida Statutes and state common law, Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure and federal common law and alleges:

<u>**PARTIES, JURISDICTION & VENUE**</u>

1.       The Debtor is a Florida resident and is *sui juris*.

2.       The Trustee is the duly appointed and acting Chapter 7 Trustee for the benefit of the creditors of the estate.

3.       Defendant Golden Summit Investors Group, Ltd. ("Golden Summit") is a Nevada corporation with its principal place of business in Colorado that had brokerage accounts carried by Penson Financial Services, Inc. (succeed by Apex Clearing Corp. ("Penson Financial") through Defendant Viewpoint Securities, LLC ("Viewpoint").

4.       Defendant Extreme Capital LLC ("Defendant Extreme") is a Nevada business entity with its principal place of business in Colorado.

5.       Defendant Coddington Family Trust is a trust that was formed in and has its principal place of business in the state of Colorado; Defendants Daniel Scott Coddington ("Defendant S. Coddington") and Daniel Dirk Coddington ("Defendant D. Coddington") are the trustees of the Coddington Family Trust.

6.       Defendant Daniel Dirk Coddington is a resident of Colorado Springs, Colorado. He is the father of Defendant S. Coddington is a trustee of the Coddington Family Trust and has been the owner and served as an officer and/or director of Defendants Golden Summit and Extreme.

7. Defendant Daniel Scott Coddington is a resident of Colorado Springs, Colorado. He is the son of Defendant D. Coddington, is a trustee of Defendant Coddington Family Trust, was the vice president, treasurer and director of Defendant Golden Summit, and was an officer and/or director of Defendant Extreme.

8. Defendant Lewis P. Malouf is a resident of Corona Del Mar, California and served as a vice president of Defendant Extreme.

9. Defendant Mary Ruth LLC ("Defendant Mary Ruth") is a New York limited liability company with its principal place of business in New York and has had a brokerage account carried by Penson Financial through Defendant Viewpoint.

10. Upon information and belief, Defendant David Genecco is a resident of Canandaigua, New York, managing member of Defendant Mary Ruth and has had a brokerage account carried by Penson Financial through Defendant Viewpoint

11. Defendant Highland Investment Partners LLC ("Defendant Highland Investment") is an Ohio limited liability company with its principal place of business in the state of Ohio and has had a brokerage account carried by Penson Financial.

12. Defendant Aishwariya Enterprises, Inc. ("Defendant Aishwariya") is a Nevada corporation with its principal place of business in the state of California and has had brokerage accounts carried by Penson Financial through Defendant Viewpoint.

13. Defendant Vivek Chandrahasan is a resident of the state of California and has been president, secretary, treasurer, and director of Defendant Aishwariya, and has had a brokerage account carried by Penson Financial through Defendant Viewpoint.

14. Defendant Viewpoint Securities, LLC is a Delaware limited liability company with its principal place of business in San Diego, California that provided securities brokerage services.

4

Defendant Viewpoint utilized Penson Financial as the firm's clearing house.  Defendant Viewpoint withdrew its registration as a broker-dealer with the Securities and Exchange Commission, effective December 2012.

15.    Defendant Seth Leyton is a resident of San Diego, California. He was a registered representative, chief executive officer, managing member and chief compliance officer of Defendant Viewpoint. On approximately October 11, 2013 FINRA barred Defendant Leyton from association with any FINRA member in any capacity.

16.    Defendant Erwin Law Group, P.C. ("Defendant Erwin Law) is a New York professional corporation with its principal place of business in the state of New York. Defendant Jesse Erwin is the principal of Defendant Erwin Law.

17.     Defendant Jesse Erwin is an attorney licensed to practice law in the state of New York and is a resident of LasVegas, Nevada. At all relevant times, Defendant Erwin was the sole principal of Defendant Erwin Law. Defendant StoneRock Capital Group, LLC ("Defendant StoneRock") was a Nevada limited liability company with its principal place of business in Arizona and has had a brokerage account carried by Penson Financial through Second Market Inc., a brokerage firm  Defendant Michael Columbia was a managing member, chief executive officer, chairman and executive vice president of Defendant StoneRock. Defendant Joanna I. Columbia (a/k/a Joanna I. Ornowska) has been married to Michael Columbia, was a board member and chief executive officer of Defendant StoneRock.

18.    Defendant Michael Columbia ("Defendant M. Columbia") was a resident of Scottsdale, Arizona.  He was a managing member, chief executive officer, chairman and executive vice president of Defendant StoneRock.

19.    Defendant Joanna I. Columbia (a/k/a Joanna I. Ornowska) ("Defendant J. Columbia") is a resident of Scottsdale, Arizona and is the wife of Defendant Michael Columbia, was a board member and chief executive officer of Defendant StoneRock.

20.    On information and belief, Defendant J.R. Richardson Investments is a California business entity and its principal place of business is located in the state of California.

21.    Defendant Jimmy L. Richardson is a resident of the state of California and is the principal of Defendant J.R. Richardson Investments.

22.    Defendant Wilshire Associates, Inc. is a California company with its principal place of business in Santa Monica, California.

23.    Defendant FSC Securities Corp. is a Delaware corporation with its principal place of business in Atlanta, Georgia.

24.    Defendant Martin Nelson & Co., Inc. is a Washington company with its principal place of business in Seattle, Washington.

25.    Defendant Dominick Investors Services, Corp. is a New York corporation with its principal place of business in the state of New York carried by Pershing LLP as it's clearing house

26.    Defendant BMO Nesbitt Burns is full service investment firm that is a part of BMO Financial Group. Defendant BMO Nesbitt Burns's principal place of business is located in Toronto, Ontario, Canada.

27.    Defendant BAWA Financial Ltd. is an  English limited liability company with its principal place of business in Woodford Green, Essex, United Kingdom. Defendant BAWA had an account with Penson Financial through Defendant Viewpoint. Defendants John Andreas Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa DeLeon were principals of Defendant BAWA.

28.      On information and belief, Defendant John Andreas Morrison is a resident of the United Kingdom and currently resides in the United Kingdom. He was a principal of Defendant BAWA.Defendant Paul Sherman is a resident of the United Kingdomand currently resides  He was a principal of Defendant BAWA Financial Ltd.

29.      On information and belief, Defendant Rafal Brenner is a resident of the United Kingdom and currently resides in the United Kingdom. Defendant was a principal of Defendant BAWA Financial Ltd.

30.      On information and belief, Defendant Sandra Josefa DeLeon is a resident of the United Kingdom and currently resides in England. She was a principal of Defendant BAWA Financial Ltd.

31.      Defendant Mykael Morgan is a resident of Elk Grove, California.

32.      On information and belief, Defendant Ron Cornforth is a resident of the United Kingdom and currently resides in the United Kingdom.

33.      Defendant Vincent G. Farris Co, L.P.A. has been an Ohio limited professional association. Defendant Vincent G. Farris is a principal/partner of Defendant Vincent G. Farris Co., L.P.A.

34.      Defendant Vincent G. Farris is a resident of Ohio and is an attorney licensed to practice law in the state of Ohio. He has been the principal/partner of Defendant Vincent G. Farris Co., L.P.A.

35.      On information and belief, Defendant Gregory P. Stodghill is a resident of the state of Indiana and is currently incarcerated at Milan FCI, Milan, Michigan.

36.      Defendant Ian Russell is a resident and resides in the United Kingdom.

37.     Defendants John Does #1-100 and Jane Does #1-100, on information and belief, are the alleged beneficial owners of record of the misappropriated and stolen subject assets including the relevant Collateralized Mortgage Obligations and/or other securities that are the subject of the Complaint, and received interest payments that were generated and disbursed pursuant to the terms of the contracts and securitization papers that govern the payment and disbursement terms and conditions of the relevant securities.

38.     Defendants ABC Companies #1-100, on information and belief, are the alleged beneficial owners of record of the misappropriated and stolen subject assets including the relevant Collateralized Mortgage Obligations and/or other securities that are the subject of the Complaint, and received interest payments that were generated and disbursed pursuant to the terms of the contracts and securitization papers that govern the payment and disbursement terms and conditions of the relevant securities.

39.     This Court possess "core" jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H)

40.     Venue properly lies before this Court pursuant to 28 U.S.C. §§ 1408, 1409.

41.     All conditions precedent to the bringing of this action have occurred, been waived by applicable Defendants, or have been satisfied by the Trustee.

## RELEVANT FACTUAL BACKGROUND

42.     Prior to January 2010, John Marino was at the center of a large-scale fraud that was intended to unlawfully bilk innocent participants of their money or securities acquired by Marino with their funds, namely Collateralized Mortgage Obligations ("CMOs"). Greg Stodghill, Vivek Chandrahasan, Ian Russell and others worked with Marino to affect the fraud through a High Yield Investment Program scheme. Many of these innocent participants are creditors in the Estate of

8

John Mark Marino, a/k/a Ronald M. Hunter. Marino acted through JM International Commercial Consulting, Inc. ("JMICCI") and Marino, White, O'Farrell & Gonzalez, Attorneys and Solicitors. ("Marino Attorneys"). Upon information and belief, Marino improperly sent creditors' funds to Stodghill and Russell.

43.     Utilizing funds of several creditors, Marino acquired $3B Original Face Value ("OFV") of CUSIP 362461AP6 and $2.3B OFV of CUSIP 59023BAYO that were held in a business brokerage account at Andrew-Garrett, Inc. These CMOs were purchased for creditors of this bankruptcy estate. By Assignment of Assets Agreement dated January 19, 2010, JMICCI assigned these CMOs to Longhorn Properties, LLC ("Longhorn"), also a creditor. However, before Longhorn could gain control of those CMOs, JMICCI fraudulently delivered those CMOs to its brokerage account at Citigroup, Inc. and then to a Citigroup brokerage account controlled by Aishwariya and its owner Defendant Chandrahasan in without the knowledge and consent of Longhorn in order to defraud Longhorn. Thereafter, Aishwariya further transferred the CMOs to its brokerage account EKN Financial Services also without the knowledge and consent of Longhorn in order to defraud Longhorn.

44.     While under the control of Defendants Aishwariya/Chandrahasan control, during the period January through September 2010 at EKN, Defendant Chandrahasan wrongfully converted at least $612,000 in interest payments paid out by the CMOs to his own use without Longhorn's permission.

45.     After months of searching for the JMICCI/Marino CMOs assigned to Longhorn but fraudulently transferred to Aishwariya/Chandrahasan, Tommy Hammond located these CMOs at EKN and gained control of them from Defendants Aishwariya and Chandrahasan. At the same time other CMOs were also discovered that had been fraudulently taken from other creditors

including those of C-4 Worldwide Corporation ($500M Original Face Value ("OFV") of CUSIP 36246LAP6 and $501M OFV of CUSIP 20173MBA7 and Seaward Investments, LLC ($1B OFV of CUSIP 20173MBA7). There were a total of $7,301B OFV of CMOs consisting of the following:

- $2.561B OFV of CUSIP 36246LAP6;

- $2.3B OFV of CUSIP 59023BAYO;

- $1.0B OFV of CUSIP 20173MBA7;

- $439M OFV of CUSIP 22545BAW1;

- $500M OFV of CUSIP 36246LAP6; and

- $501M OFV of CUSIP 20173MBA7.

46. Thereafter these CMOs were transferred to Defendant Viewpoint brokerage accounts at Penson Financial in the names of Defendant Aishwariya and C-4, on or about October 29, 2010. Based upon Golden Summit's fraudulent representations, these CMOs were transferred on November 1, 2010 to a Golden Summit ,, Viewpoint brokerage account carried by Penson Financial without value as part of the fraud scheme conducted by Defendants Golden Summit, Extreme, ' Defendant D.Coddington, S. Coddington, Erwin Law Erwin, Malouf, Viewpoint, Leyton, StoneRock , M., J. Columbia, J.R. Richardson Investments, Richardson, BAWA, Morrison, Sherman, Brenner, Morgan and Cornforth.

47. The Golden Summit fraud scheme also ensnared Geisco FNF members who were fraudulently induced to wire at least $8,657,920 into a Golden Summit bank account and Erwin Law trust account during October and November 2010 and other investors' money and CMOs. Defendants Golden Summit, Extreme, D. Coddington, S. Coddington, Erwin Law, Erwin, Malouf, Viewpoint, Leyton, StoneRock, M. Columbia, J. Columbia, J.R.Richardson Investments, Richardson, BAWA, Morrison, Sherman, Brenner, Morgan and Cornforth fraudulently converted

the money to pay themselves and for their benefit including purchasing more CMOs that were converted to their benefit. These additional CMOs included but are not limited to the following:

- $1B OFV of CUSIP 46224AAO on or about November 12, 2010;

- $1B OFV of CUSIP 59023BAY0 on or about November 2, 2010;

- $1B OFV of CUSIP 225458BAW1 on or about November 15, 2010;

- $680M OFV of CUSIP 46631BAH8 on or about November 18, 2010;

- $1B OFV of CUSIP 46224AAO on or about November 19, 2010;

- $1B OFV of CUSIP 46224AA0 on or about November 19, 2910;

- $1.5B OFV of CUSIP 59025KBD3 on or about November 24, 2010;

- $250M OFV of CUSIP 59023BAY0 on or about November 29, 2010;

- $250M OFV of CUSIP 462264AAO on or about November 29, 2010;

- $1B OFV of CUSIP 59025KBD3 on or about December 3, 2010;

- $212M OFV of CUSIP 36246LAP6 on or about December 10, 2010;

- $1,008,402,393 OFV of CUSIP 19075DAG8 on or about December 10, 2010;

- $325M of OFV of CUSIP 46631BAH8 on or about March 7, 2011;

- $4.284 OFV of CUSIP 462264AAO on or about April 21 and 25, 2010;

- $4B OFV of CUSIP 44985AA1 on or about April 25, 2010.

- $500M OFV of CUSIP 36246LAP6 on or about May 6, 2011;

- $500M OFV of CUSIP 36246LAP6 on or about July 6, 2011; and

- $325M OFV of CUSIP 46631BAH8 on or about July 6, 2011

48.     Defendants D. Coddington, Erwin, Malouf, Morgan and Cornforth recruited the owners of the CMOs along with Geisco FNF members to participate in the Golden Summit and

11

Extreme High Yield Investment Program scheme. Upon information and belief they received proceeds that belong to the creditors.

49.     In furtherance of the scheme, Defendant D. Coddington directed al least the following CMOs to be transferred for little or <u>no value</u> to the StoneRock brokerage account at Second Market and Penson on December 7, 2010:

- $1,501,656,137 OFV of CUSIP 20173MBA7;

- $437M OFV of CUSIP 22545BAW1;

- $3.523B OFV of CUSIP 36246LAP6;

- $2.250B OFV of CUSIP 462264AAO;

- $3.3B OFV of CUSIP 59023BAY); and

- $2.5 OFV of CUSIP 59025KBO3.

50.     During the times that Golden Summit and StoneRock held the CMOs, Dan Coddington, Michael Columbia and Joanna Columbia transferred the interest paid monthly on the CMOs to themselves and used these stolen funds for their own personal benefit and personal expenses.

51.     In furtherance of the fraud scheme, StoneRock transferred $1B OFV of CUSIP 36246LAP6 to Genecco and Mary-Ruth it had acquired for insufficient or no consideration as part of the Golden Summit fraud scheme. Genecco and Mary-Ruth transferred the CMO to a Golden Summit brokerage account at Viewpoint and Penson, recovered it, and then transferred it again as part of a fraud scheme all the while taking the monthly interest payments of the CMO. This CMO is currently under the control of the Trustee.

52.     In furtherance of the fraud scheme, StoneRock transferred the stolen CMOs to certain third parties as follows:

12

- $2B OFV of CUSIP 462264AAO on or about December 14, 2010 for insufficient consideration;

- $1.5 OFV of CUSIP 59023BAYO on or about December 21, 2010;

- $250M OFV of CUSIP 36246LAP6 on or about January 28, 2011;

- $350M OFV of CUSIP 59025KBD3 on or about January 28, 2011 to Highland Investment Partners for insufficient consideration;

- $150M OFV of CUSIP 59025KBD3 on or about February 4, 2011;

- $1B OFV of CUSIP 59023BAYO on or about February 18, 2011 for insufficient consideration;

- $1B OFV of CUSIP 22545BAW1 on or about February 3, 2011;

- $1B OFV of CUSIP 59025KBD3 on or about February 4, 2011;

- $1B OFV of CUSIP 36246LAP6 on or about March 3, 2011 to Viewpoint for insufficient consideration for transfer to Genecco and Mary-Ruth;

- $750M OFV of CUSIP 36246LAP6 on or about March 22, 2011 to Dominick Investment Service Corp. for insufficient consideration;

- $273M OFV of CUSIP 36246LAP6 on or about March 24, 2011 to Dominick Investment Service Corp. for insufficient consideration;

- $1B OFV of CUSIP 20173MBA7 on or about March 30, 2011 to FSC Securities Corporation for insufficient consideration;

- $250M OFV of CUSIP 462264AAO on or about March 31, 2011;

- $300M OFV of CUSIP 59023BAYO on or about April 12, 2011 to an entity presently unknown but upon information and belief, for insufficient consideration;

- $250M OFV of CUSIP 22545BAW1 on or about July 27, 2011 to Wilshire and Associates, Inc. for insufficient consideration;

- $501M OFV of CUSIP 20173MBA7 on or about July 27, 2011;

- $189M OFV of CUSIP 22545BAW1 on or about July 28, 2011 to Wilshire and Associates, Inc. for insufficient consideration; and

- $656,137,000 OFV of CUSIP 20173MBA7 on an unknown date.

13

53.    In furtherance of the scheme, BAWA, Morrison, Sherman, Brenner and Deleon received $4,224B OFV of CUSIP 462264AAO and $4B OFV of CUSIP 44985FAA1 from Golden Summit at its brokerage account at Viewpoint and Penson on or about May 4, 2011 for grossly insufficient consideration. Then on July 5, 2011, they transferred these CMOs for no value to other accounts and closed its brokerage account at Viewpoint and Penson.

54.    In furtherance of the Golden Summit fraud, D.Coddington and Malouf as Extreme induced Financial Services Group LLC ("Financial Services") to transfer $1B OFV of CUSIP 462264AAO into the Golden Summit brokerage account at Viewpoint and Penson on June 14, 2011 for no value exchanged. Thereafter, D. Coddington and Malouf received at least $53,867 in interest payments from Financial Services' CMO. On or about October 10, 2011, Golden Summit, D. Coddington and Malouf transferred the CMO to a third party for insufficient or no consideration and without the knowledge and consent of Financial Services.

55.    In furtherance of the fraud, D. Coddington misappropriated approximately $3M of creditors' funds, CMO interest payments and payments from Columbia from the liquidation of CMOs transferred to StoneRock.

56.    Erwin and Erwin Law misappropriated at least $800,000 of creditors' funds, most of which he transferred directly from the Erwin Law trust account.

57.    Malouf received approximately $77,000 in misappropriated funds of creditors.

58.    Leyton received approximately $86,000 in misappropriated creditors' funds and at least $45,000 from the improper sale of the creditors' CMOs.

59.    Michael and Joanna Columbia misappropriated approximately $3.4M in proceeds from the liquidation of the above described CMOs and taking for their personal use the CMO interest payments between December 2010 and August 2011.

14

60. Coddington Family Trust received no less than $945,000 of creditors' funds from Extreme and Golden Summit accounts for which it provided no consideration.

61. Scott Coddington received at least $640,000 of creditors' funds.

62. Farris Co. and Farris received approximately $625,000 of creditors' funds from Golden Summit and $40,000 from Erwin Law trust account for which neither provided any consideration for the funds they received.

63. Jimmy Richardson assisted StoneRock and the Columbias to acquire, liquidate and transfer the CMOs set out above. For this he received creditors' funds for which he provided no consideration.

64. In furtherance of the scheme, the CMOs were transferred to third parties for insufficient consideration who received interest payments for the CMOs and then transferred the CMOs on to other third parties continuing up to the present.

**Count I: Alter Ego/Corporate Veil Piercing**
**(Against Defendants Extreme Capital Ltd, Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf)**

65. The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

66. This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants the Coddington Family Trust, D. Coddington, S. Coddington and Malouf, and Defendant Extreme, which are alter egos of each other.

15

67.     As set forth above Defendant Extreme Capital Ltd. has no corporate existence or purpose that is legitimate or lawful.

68.     Defendant Extreme was formed solely as an instrumentality for Defendants the Coddington Family Trust, D. Coddington, S. Coddington and Malouf to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

69.     Because the Coddington Family Trust, D. Coddington,  S.Coddington and Malouf formed and operated Defendant Extreme. for an illegal purpose, and because Defendant Extreme has had no legitimate or separate corporate existence, the separate existence of Defendant Extreme should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding the Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf liable for all debts owed by Defendant Extreme Capital Ltd., ordering all of Extreme Capital Ltd's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count II: Alter Ego/Corporate Veil Piercing
**(Against Defendants Mary-Ruth LLC and David Genecco)**

70.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

71.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Genecco and Defendant Mary-Ruth, which are alter egos of each other.

72.     As set forth above Defendant Mary Ruth has no corporate existence or purpose that is or ever was legitimate or lawful.

16

73.     Defendant Mary-Ruth was formed solely as an instrumentality for Defendant David Genecco to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

74.     Because Defendant Genecco formed and operated Defendant Mary-Ruth for an illegal purpose, and because Defendant Mary Ruth has no legitimate or separate corporate existence, the separate existence of Defendant Mary-Ruth should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant David Genecco liable for all debts owed by Defendant Mary-Ruth LLC, ordering all of Defendant Mary-Ruth LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count III: Alter Ego/Corporate Veil Piercing
**(Against Defendants Aishwariya Enterprises, LLC and Vivek Chandrahasan)**

75.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

76.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Chandrahasan and Defendant Aishwariya, which are alter egos of each other.

77.     As set forth above Defendant Aishwariya has no corporate existence or purpose that is legitimate or lawful.

78.     Defendant Aishwariya was formed solely as an instrumentality for Defendant Chandrahasan to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

17

79.     Because Defendant Chandrahasan formed and operated Defendant Aishwariya for an illegal purpose, and because Defendant Aishwariya has had no legitimate or separate corporate existence, the separate existence of Defendant Aishwariya should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Vivek Chandrahasan liable for all debts owed by Defendant Aishwariya Enterprises, LLC, ordering all of Defendant Aishwariya Enterprises, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count IV: Alter Ego/Corporate Veil Piercing
### (Against Defendants Viewpoint Securities LLC and Seth Leyton)

80.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

81.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Leyton and Defendant Viewpoint, which are alter egos of each other.

82.     As set forth above Defendant Viewpoint has no corporate existence or purpose that is legitimate or lawful.

83.     Defendant Viewpoint was formed solely as an instrumentality for Defendant Leyton to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

84.     Because Defendant Leyton formed and operated Defendant Viewpoint for an illegal purpose, and because Defendant Viewpoint has had no legitimate or separate corporate existence, the separate existence of Defendant Viewpoint should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Seth Leyton liable for all debts owed by Defendant Viewpoint

18

Securities, LLC, ordering all of Defendant Viewpoint Securities, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

**Count V: Alter Ego/Corporate Veil Piercing**
**(Against Defendants Erwin Law Group, P.C. and Jesse Erwin)**

85. The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

86. This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Erwin and Defendant Erwin Law which are alter egos of each other.

87. As set forth above Defendant Erwin Law has no corporate existence or purpose that is legitimate or lawful.

88. Defendant Erwin Law was formed solely as an instrumentality for Defendant Erwin to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

89. Because Defendant Erwin formed and operated Defendant Erwin Law for an illegal purpose, and because Defendant Erwin Law has had no legitimate or separate corporate existence, the separate existence of Defendant Erwin Law should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Jesse Erwin liable for all debts owed by Defendant Erwin Law Group, P.C., ordering all of Defendant Erwin Law Group P.C.'s assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

**Count VI: Alter Ego/Corporate Veil Piercing**
**(Against Defendants StoneRock Capital Group, LLC, Michael Columbia and Joanna I.**
**Columbia, (a/k/a Joanna I. Ornowska))**

19

90.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

91.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants M. Columbia, J. Columbia and Defendant StoneRock, which are alter egos of each other.

92.     As set forth above Defendant StoneRock has had no corporate existence or purpose that is legitimate or lawful.

93.     Defendant StoneRock was formed solely as an instrumentality for Defendants M. and J. Columbia to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

94.     Because Defendants M. and J. Columbia formed and operated Defendant StoneRock for an illegal purpose, and because Defendant StoneRock has no legitimate or separate corporate existence, the separate existence of Defendant StoneRock should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendants Michael and Joanna Columbia liable for all debts owed by Defendant Stonerock Capital Group, LLC, ordering all of Defendant StoneRock Capital Group, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count VII: Alter Ego/Corporate Veil Piercing
**(Against Defendants J.R. Richardson Investments and Jimmy L. Richardson)**

95.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

96.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Richardson and Defendant J.R. Richardson Investments, which are alter egos of each other.

97.     As set forth above Defendant J.R. Richardson Investments has had no corporate existence or purpose that is legitimate or lawful.

98.     Defendant J.R. Richardson Investments was formed solely as an instrumentality for Defendant Richardson to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

99.     Because Defendant Richardson formed and operated Defendant J.R. Richardson Investments for an illegal purpose, and because Defendant J.R. Richardson Investments has no legitimate or separate corporate existence, the separate existence of Defendant J.R. Richardson Investments should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Jimmy L. Richardson liable for all debts owed by Defendant J.R. Richardson Investments, ordering all of Defendant J.R. Richardson Investments' assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count VIII: Alter Ego/Corporate Veil Piercing
**(Against Defendants BAWA Financial Ltd, John Andreas Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa DeLeon)**

100.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

21

101.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Morrison, Sherman, Brenner, DeLeon and Defendant BAWA, which are alter egos of each other.

102.    As set forth above Defendant BAWA has no corporate existence or purpose that is legitimate or lawful.

103.    Defendant BAWA was formed solely as an instrumentality for Defendants Morrison, Sherman, Brenner, and DeLeon to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

104.    Because Defendants Morrison, Sherman, Brenner, and DeLeon formed and operated Defendant BAWA for an illegal purpose, and because Defendant BAWA has no legitimate or separate corporate existence, the separate existence of Defendant BAWA should be wholly disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendants John Andres Morrison, Paul Sherman, Rafal Brenner, and Sandra Josefa DeLeon liable for all debts owed by Defendant BAWA Financial Ltd ordering all of Defendant BAWA Financial Ltd assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### COUNT IX: Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes*
### (Against All Defendants)

105.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

106.    The transfers set forth in paragraphs 1-71 constitute Fraudulent Transfers within the ambit and meaning of 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes* and are subject to being set-aside and recovered by the Trustee for the benefit of the Marino bankruptcy estate and its' creditors.

Wherefore, the Trustee respectfully requests entry of judgment against all Defendants, setting-aside the transfers described hereinabove as fraudulent transfers and ordering the turnover to the bankruptcy estate of the subject CMOs in accordance with 11 U.S.C. §§ 542, 543, 544, 548 and 550 and applicable law.

### COUNT X: Recovery of Fraudulent Transfers Pursuant to
### 11 U.S.C. § 550
**(Against All Defendants)**

107.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-71 of the Complaint as though fully set forth herein.

108.    To the extent any of the Transfers set forth in Paragraphs 1-71 are found to be Fraudulent Transfers within the ambit and meaning of 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes*, each and every CMO identified as being fraudulently transferred constitutes property of this bankruptcy estate and must be turned-over to the Trustee, immediately, along with any and all accrued interest payments and the right to receive any further interest payments on each such CMO found to have been fraudulently transferred.  In addition, any and all interest payments previously received on the account of any such fraudulently transferred CMO, shall be repaid to the Trustee under the *"value of the property"* provision of  11 U.S.C. § 550 (a).  In the alternative, in the event the subject CMO(s) are no longer available for recovery, the Trustee seeks the value of any such CMO(s) and for such other relief as this Court deems appropriate.

**Dated: April 4, 2017**                    Respectfully submitted,


                                            */s/ Steven S. Newburgh*
                                            Steven S. Newburgh
                                            Florida Bar No. 348619

                                            **MCLAUGHLIN & STERN, LLP**.
                                            525 Okeechobee Boulevard
                                            CityPlace Office Tower – Suite 1700
                                            West Palm Beach, FL 33401
                                            Tel: (561) 659-4020
                                            Email: snewburgh@mclaughlinstern.com
                                            ***Counsel for Chapter 7 Trustee,***
                                            ***Margaret J. Smith***

24