**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:

Case No. 12-32119-MAM

JOHN MARK MARINO, a/k/a
RONALD M. HUNTER,

Chapter 7

    **Debtor.**

_____/

MARGARET J. SMITH, not individually but
As Chapter 7 Trustee of the estate of Debtor
John Mark Marino, a/k/a/ Ronald M. Hunter,

Adversary No. 15-01466-MAM

    **Plaintiff,**

vs.

GOLDEN SUMMIT INVESTORS GROUP,
LTD., EXTREME CAPITAL, LTD,
CODDINGTON FAMILY TRUST, DANIEL
DIRK CODDINGTON, individually,
DANIEL SCOTT CODDINGTON, individually,
LEWIS P. MALOUF, individually,
MARY-RUTH, LLC, DAVID GENECCO,
Individually, HIGHLAND
INVESTMENT PARTNERS, LLC,
AISHWARIYA ENTERPRISES, INC.,
VIVEK CHANDRAHASAN, individually,
VIEWPOINT SECURITIES, LLC,
SETH LEYTON, individually, ERWIN LAW
GROUP, P.C., JESSE ERWIN, individually,
STONEROCK CAPITAL GROUP, LLC,
MICHAEL COLUMBIA, individually, JOANNA I.
COLUMBIA (A/K/A JOANNA I. ORNOWSKA),
Individually, J.R. RICHARDSON INVESTMENTS,
JIMMY L. RICHARDSON, individually,
WILSHIRE ASSOCIATES, INC.,
FSC SECURITIES CORP.,
DOMINICK INVESTORS SERVICES, CORP.,
BMO NESBITT BURNS, RJ STEICHEN &CO.,
BAWA FINANCIAL LTD., JOHN ANDREAS
MORRISON, individually, PAUL SHERMAN,

{F0034438.2}

**Individually, RAFAL BRENNER, individually,**
**SANDRA JOSEFA DELEON, individually,**
**MYKAEL MORGAN, individually, RON CORNFORTH,**
**Individually, VINCENT G. FARRIS CO., L.P.A.,**
**VINCENT G. FARRIS, individually, GREG STODGILL,**
**Individually, IAN Russell, individually,**
**JOHN DOES #1-100, JANE DOES #1-100, and**
**ABC COMPANIES #1-100**

   **Defendants.**
_____/

## <u>SECOND AMENDED ADVERSARY COMPLAINT</u>

Margaret J. Smith (the "Trustee"), not individually but as Chapter 7 Trustee of the

bankruptcy estate of the Debtor, John Mark Marino, a/k/a/ Ronald M. Hunter ("Debtor"), files this

Second Amended Adversary Complaint ("Complaint") against Defendants, GOLDEN SUMMIT

INVESTORS GROUP, LTD., EXTREME CAPITAL, LTD, CODDINGTON FAMILY TRUST,

DANIEL DIRK CODDINGTON, individually, DANIEL SCOTT CODDINGTON, individually,

LEWIS P. MALOUF, individually, HIGHLAND INVESTMENT PARTNERS, LLC,

AISHWARIYA ENTERPRISES, INC., VIVEK CHANDRAHASAN, individually, VIEWPOINT

SECURITIES, LLC, SETH LEYTON, individually, ERWIN LAW GROUP, P.C., JESSE ERWIN,

individually, STONEROCK CAPITAL GROUP, LLC, MICHAEL COLUMBIA, individually,

JOANNA I.COLUMBIA (A/K/A JOANNA I. ORNOWSKA), Individually, J.R. RICHARDSON

INVESTMENTS, JIMMY L. RICHARDSON, individually, WILSHIRE ASSOCIATES, INC.,

DOMINICK INVESTORS SERVICES, CORP., BAWA FINANCIAL LTD., JOHN ANDREAS

MORRISON, individually, PAUL SHERMAN, Individually, RAFAL BRENNER, individually,

SANDRA JOSEFA DELEON, individually, MYKAEL MORGAN, individually, RON

CORNFORTH,  individually, VINCENT G. FARRIS CO., L.P.A., VINCENT G. FARRIS,

individually, GREGORY P. STODGILL, individually, IAN RUSSELL, individually, , JOHN

DOES #1-100,JANE DOES #1-100, AND ABC COMPANIES #1-100, to avoid and recover avoidable transfers and for other relief pursuant to §§ 542, 544, 547, 548 and 550 of Title 11 of the United States Code (the "Code"), Chapter 726 of the Florida Statutes and state common law, Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure and federal common law and alleges:

## PARTIES, JURISDICTION & VENUE

1.      The Debtor is a Florida resident and is *sui juris*.

2.      The Trustee is the duly appointed and acting Chapter 7 Trustee for the benefit of the creditors of the estate.

3.      Defendant Golden Summit Investors Group, Ltd. ("Golden Summit") is a Nevada corporation with its principal place of business in Colorado that had brokerage accounts carried by Penson Financial Services, Inc. (succeed by Apex Clearing Corp. ("Penson Financial") through Defendant Viewpoint Securities, LLC ("Viewpoint").

4.      Defendant Extreme Capital LLC ("Defendant Extreme") is a Nevada business entity with its principal place of business in Colorado.

5.      Defendant Coddington Family Trust is a trust that was formed in and has its principal place of business in the state of Colorado; Defendants Daniel Scott Coddington ("Defendant S. Coddington") and Daniel Dirk Coddington ("Defendant D. Coddington") are the trustees of the Coddington Family Trust.

6.      Defendant Daniel Dirk Coddington is a resident of Colorado Springs, Colorado. He is the father of Defendant S. Coddington is a trustee of the Coddington Family Trust and has been the owner and served as an officer and/or director of Defendants Golden Summit and Extreme.

7.      Defendant Daniel Scott Coddington is a resident of Colorado Springs, Colorado. He is the son of Defendant D. Coddington, is a trustee of Defendant Coddington Family Trust, was the vice president, treasurer, and director of Defendant Golden Summit, and was an officer and/or director of Defendant Extreme.

8.      Defendant Lewis P. Malouf is a resident of Corona Del Mar, California and served as a vice president of Defendant Extreme.

9.      Defendant Highland Investment Partners LLC ("Defendant Highland Investment") is an Ohio limited liability company with its principal place of business in the state of Ohio and has had a brokerage account carried by Penson Financial.

10.      Defendant Aishwariya Enterprises, Inc. ("Defendant Aishwariya") is a Nevada corporation with its principal place of business in the state of California and has had brokerage accounts carried by Penson Financial through Defendant Viewpoint.

11.      Defendant Vivek Chandrahasan is a resident of the state of California and has been president, secretary, treasurer, and director of Defendant Aishwariya, and has had a brokerage account carried by Penson Financial through Defendant Viewpoint.

12.      Defendant Viewpoint Securities, LLC is a Delaware limited liability company with its principal place of business in San Diego, California that provided securities brokerage services. Defendant Viewpoint utilized Penson Financial as the firm's clearing house. Defendant Viewpoint withdrew its registration as a broker-dealer with the Securities and Exchange Commission, effective December 2012.

15.      Defendant Seth Leyton is a resident of San Diego, California. He was a registered representative, chief executive officer, managing member and chief compliance officer of

Defendant Viewpoint. On October 11, 2013, FINRA barred Defendant Leyton from association with any FINRA member in any capacity.

16.    Defendant Erwin Law Group, P.C. ("Defendant Erwin Law) is a New York professional corporation with its principal place of business in the state of New York. Defendant Jesse Erwin is the principal of Defendant Erwin Law.

17.    Defendant Jesse Erwin is an attorney licensed to practice law in the state of New York and is a resident of Las Vegas, Nevada. At all relevant times, Defendant Erwin was the sole principal of Defendant Erwin Law. Defendant StoneRock Capital Group, LLC ("Defendant StoneRock") was a Nevada limited liability company with its principal place of business in Arizona and has had a brokerage account carried by Penson Financial through Second Market Inc., a brokerage firm Defendant Michael Columbia was a managing member, chief executive officer, chairperson, and executive vice president of Defendant StoneRock. Defendant Joanna I. Columbia (a/k/a Joanna I. Ornowska) has been married to Michael Columbia, was a board member and chief executive officer of Defendant StoneRock.

18.    Defendant Michael Columbia ("Defendant M. Columbia") was a resident of Scottsdale, Arizona. He was a managing member, chief executive officer, chairperson, and executive vice president of Defendant StoneRock.

19.    Defendant Joanna I. Columbia (a/k/a Joanna I. Ornowska) ("Defendant J. Columbia") is a resident of Scottsdale, Arizona and is the wife of Defendant Michael Columbia, was a board member and chief executive officer of Defendant StoneRock.

20.    On information and belief, Defendant J.R. Richardson Investments is a California business entity, and its principal place of business is in the state of California.

21.     Defendant Jimmy L. Richardson is a resident of the state of California and is the principal of Defendant J.R. Richardson Investments.

22.     Defendant Wilshire Associates, Inc. is a California company with its principal place of business in Santa Monica, California.

23.     Defendant Dominick Investors Services, Corp. is a New York corporation with its principal place of business in the state of New York carried by Pershing LLP as it is a clearing house

24.     Defendant BAWA Financial Ltd. is an English limited liability company with its principal place of business in Woodford Green, Essex, United Kingdom. Defendant BAWA had an account with Penson Financial through Defendant Viewpoint. Defendants John Andreas Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa DeLeon were principals of Defendant BAWA.

25.     Defendant, Taylor Wilson, is a resident of the Province of Ontario

26.     On information and belief, Defendant John Andreas Morrison is a resident of the United Kingdom and currently resides in the United Kingdom. He was a principal of Defendant BAWA. Defendant Paul Sherman is a resident of the United Kingdom and currently resides He was a principal of Defendant BAWA Financial Ltd.

27.     On information and belief, Defendant Rafal Brenner is a resident of the United Kingdom and currently resides in the United Kingdom. Defendant was a principal of Defendant BAWA Financial Ltd.

28.     On information and belief, Defendant Sandra Josefa DeLeon is a resident of the United Kingdom and currently resides in England. She was a principal of Defendant BAWA Financial Ltd.

29.     Defendant Mykael Morgan is a resident of Elk Grove, California.

30.     On information and belief, Defendant Ron Cornforth is a resident of the United Kingdom and currently resides in the United Kingdom.

31.     Defendant Vincent G. Farris Co, L.P.A. has been an Ohio limited professional association. Defendant Vincent G. Farris is a principal/partner of Defendant Vincent G. Farris Co., L.P.A.

32.     Defendant Vincent G. Farris is a resident of Ohio and is an attorney licensed to practice law in the state of Ohio. He has been the principal/partner of Defendant Vincent G. Farris Co., L.P.A.

33.     On information and belief, Defendant Gregory P. Stodghill is a resident of the state of Indiana and is no longer incarcerated at Milan FCI, Milan, Michigan.

34.     Defendant Ian Russell is a resident and resides in the United Kingdom.

35.     On information and belief, Defendant Taylor Wilson is a resident in Canada and currently resides in Canada.

36.     On information and belief, Defendant 7608845 Canada Corp. is a dissolved corporation in Canada.

36.     Defendants John Does #1-100 and Jane Does #1-100, on information and belief, are the alleged beneficial owners of record of the misappropriated and stolen subject assets including the relevant Collateralized Mortgage Obligations and/or other securities that are the subject of the Complaint, and received interest payments that were generated and disbursed pursuant to the terms of the contracts and securitization papers that govern the payment and disbursement terms and conditions of the relevant securities.

37.     Defendants ABC Companies #1-100, on information and belief, are the alleged beneficial owners of record of the misappropriated and stolen subject assets including the relevant

Collateralized Mortgage Obligations and/or other securities that are the subject of the Complaint, and received interest payments that were generated and disbursed pursuant to the terms of the contracts and securitization papers that govern the payment and disbursement terms and conditions of the relevant securities.

38.    This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H)

39.    Venue properly lies before this Court pursuant to 28 U.S.C. §§ 1408, 1409.

40.    All conditions precedent to the bringing of this action have occurred, been waived by applicable Defendants or have been satisfied by the Trustee.

## <u>RELEVANT FACTUAL BACKGROUND</u>

41.    Prior to January 2010, John Marino was at the center of a large-scale fraud that was intended to unlawfully bilk innocent participants of their money or securities acquired by Marino with their funds, namely Collateralized Mortgage Obligations ("CMOs"). Greg Stodghill, Vivek Chandrahasan, Ian Russell and others worked with Marino to affect the fraud through a High Yield Investment Program scheme. Many of these innocent participants are creditors in the Estate of John Mark Marino, a/k/a Ronald M. Hunter. Marino acted through JM International Commercial Consulting, Inc. ("JMICCI") and Marino, White, O'Farrell & Gonzalez, Attorneys and Solicitors. ("Marino Attorneys"). Upon information and belief, Marino improperly sent creditors' funds to Stodghill and Russell.

42.    Utilizing funds of several creditors, Marino acquired $3B Original Face Value ("OFV") of CUSIP 362461AP6 and $2.3B OFV of CUSIP 59023BAYO that were held in a business brokerage account at Andrew-Garrett, Inc. These CMOs were purchased for creditors of this bankruptcy estate. By Assignment of Assets Agreement dated January 19, 2010, JMICCI assigned these CMOs to Longhorn Properties, LLC ("Longhorn"), also a creditor. However, before

Longhorn could gain control of those CMOs, JMICCI fraudulently delivered those CMOs to its brokerage account at Citigroup, Inc. and then to a Citigroup brokerage account controlled by Aishwariya and its owner Defendant Chandrahasan in without the knowledge and consent of Longhorn to defraud Longhorn. Thereafter, Aishwariya further transferred the CMOs to its brokerage account EKN Financial Services also without the knowledge and consent of Longhorn to defraud Longhorn.

43.    While under the control of Defendants Aishwariya/Chandrahasan control, during the period January through September 2010 at EKN, Defendant Chandrahasan wrongfully converted at least $612,000 in interest payments paid out by the CMOs to his own use without Longhorn's permission.

44.    After months of searching for the JMICCI/Marino CMOs assigned to Longhorn but fraudulently transferred to Aishwariya/Chandrahasan, Tommy Hammond located these CMOs at EKN and gained control of them from Defendants Aishwariya and Chandrahasan. At the same time other CMOs were also discovered that had been fraudulently taken from other creditors including those of C-4 Worldwide Corporation ($500M Original Face Value ("OFV") of CUSIP 36246LAP6 and $501M OFV of CUSIP 20173MBA7 and Seaward Investments, LLC ($1B OFV of CUSIP 20173MBA7). There was a total of $7,301B OFV of CMOs consisting of the following:

- $2.561B OFV of CUSIP 36246LAP6;

- $2.3B OFV of CUSIP 59023BAYO;

- $1.0B OFV of CUSIP 20173MBA7;

- $439M OFV of CUSIP 22545BAW1;

- $500M OFV of CUSIP 36246LAP6; and

- $501M OFV of CUSIP 20173MBA7.

45.     Thereafter these CMOs were transferred to Defendant Viewpoint brokerage accounts at Penson Financial in the names of Defendant Aishwariya and C-4, on or about October 29, 2010. Based upon Golden Summit's fraudulent representations, these CMOs were transferred on November 1, 2010, to a Golden Summit, Viewpoint brokerage account carried by Penson Financial without value as part of the fraud scheme conducted by Defendants Golden Summit, Extreme,' Defendant D. Coddington, S. Coddington, Erwin Law Erwin, Malouf, Viewpoint, Leyton, StoneRock, M., J. Columbia, J.R. Richardson Investments, Richardson, BAWA, Morrison, Sherman, Brenner, Morgan and Cornforth.

46.     The Golden Summit fraud scheme also ensnared Geisco FNF members who were fraudulently induced to wire at least $8,657,920 into a Golden Summit bank account and Erwin Law trust account during October and November 2010 and other investors' money and CMOs. Defendants Golden Summit, Extreme, D. Coddington, S. Coddington, Erwin Law, Erwin, Malouf, Viewpoint, Leyton, StoneRock, M. Columbia, J. Columbia, J. R. Richardson Investments, Richardson, BAWA, Morrison, Sherman, Brenner, Morgan, and Cornforth fraudulently converted the money to pay themselves and for their benefit including purchasing more CMOs that were converted to their benefit. These additional CMOs included but are not limited to the following:

- $1B OFV of CUSIP 46224AAO on or about November 12, 2010;

- $1B OFV of CUSIP 59023BAY0 on or about November 2, 2010;

- $1B OFV of CUSIP 225458BAW1 on or about November 15, 2010;

- $680M OFV of CUSIP 46631BAH8 on or about November 18, 2010;

- $1B OFV of CUSIP 46224AAO on or about November 19, 2010;

- $1.5B OFV of CUSIP 59025KBD3 on or about November 24, 2010;

- $250M OFV of CUSIP 59023BAY0 on or about November 29, 2010;

- $250M OFV of CUSIP 462264AAO on or about November 29, 2010;

- $1B OFV of CUSIP 59025KBD3 on or about December 3, 2010;

- $212M OFV of CUSIP 36246LAP6 on or about December 10, 2010;

- $1,008,402,393 OFV of CUSIP 19075DAG8 on or about December 10, 2010;

- $325M of OFV of CUSIP 46631BAH8 on or about March 7, 2011;

- $4.284 OFV of CUSIP 462264AAO on or about April 21 and 25, 2010;

- $4B OFV of CUSIP 44985AA1 on or about April 25, 2010.

- $500M OFV of CUSIP 36246LAP6 on or about May 6, 2011;

- $500M OFV of CUSIP 36246LAP6 on or about July 6, 2011; and

- $325M OFV of CUSIP 46631BAH8 on or about July 6, 2011

47.    Defendants D. Coddington, Erwin, Malouf, Morgan, and Cornforth recruited the owners of the CMOs along with Geisco FNF members to participate in the Golden Summit and Extreme High Yield Investment Program scheme. Upon information and belief, they received proceeds that belong to the creditors.

48.    In furtherance of the scheme, Defendant D. Coddington directed at least the following CMOs to be transferred for little or no value to the StoneRock brokerage account at Second Market and Penson on December 7, 2010:

- $1,501,656,137 OFV of CUSIP 20173MBA7;

- $437M OFV of CUSIP 22545BAW1;

- $3.523B OFV of CUSIP 36246LAP6;

- $2.250B OFV of CUSIP 462264AAO;

- $3.3B OFV of CUSIP 59023BAY); and

- $2.5 OFV of CUSIP 59025KBO3.

49.     During the times that Golden Summit and StoneRock held the CMOs, Dan Coddington, Michael Columbia and Joanna Columbia transferred the interest paid monthly on the CMOs to themselves and used these stolen funds for their own personal benefit and personal expenses.

50.     In furtherance of the fraud scheme, StoneRock transferred $1B OFV of CUSIP 36246LAP6 to Genecco and Mary-Ruth it had acquired for insufficient or no consideration as part of the Golden Summit fraud scheme. Genecco and Mary-Ruth transferred the CMO to a Golden Summit brokerage account at Viewpoint and Penson, recovered it, and then transferred it again as part of a fraud scheme all the while taking the monthly interest payments of the CMO. This CMO is currently under the control of the Trustee.

51.     In furtherance of the fraud scheme, StoneRock transferred the stolen CMOs to certain third parties as follows:

- $2B OFV of CUSIP 462264AAO on or about December 14, 2010 for insufficient consideration;

- $1.5 OFV of CUSIP 59023BAYO on or about December 21, 2010;

- $250M OFV of CUSIP 36246LAP6 on or about January 28, 2011;

- $350M OFV of CUSIP 59025KBD3 on or about January 28, 2011 to Highland Investment Partners for insufficient consideration;

- $150M OFV of CUSIP 59025KBD3 on or about February 4, 2011;

- $1B OFV of CUSIP 59023BAYO on or about February 18, 2011 for insufficient consideration;

- $1B OFV of CUSIP 22545BAW1 on or about February 3, 2011;

- $1B OFV of CUSIP 59025KBD3 on or about February 4, 2011;

- $1B OFV of CUSIP 36246LAP6 on or about March 3, 2011 to Viewpoint for insufficient consideration for transfer to Genecco and Mary-Ruth;

- $750M OFV of CUSIP 36246LAP6 on or about March 22, 2011 to Dominick Investment Service Corp. for insufficient consideration;

- $273M OFV of CUSIP 36246LAP6 on or about March 24, 2011 to Dominick Investment Service Corp. for insufficient consideration;

- $1B OFV of CUSIP 20173MBA7 on or about March 30, 2011 to FSC Securities Corporation for insufficient consideration;

- $250M OFV of CUSIP 462264AAO on or about March 31, 2011;

- $300M OFV of CUSIP 59023BAYO on or about April 12, 2011 to an entity presently unknown but upon information and belief, for insufficient consideration;

- $250M OFV of CUSIP 22545BAW1 on or about July 27, 2011 to Wilshire and Associates, Inc. for insufficient consideration;

- $501M OFV of CUSIP 20173MBA7 on or about July 27, 2011;

- $189M OFV of CUSIP 22545BAW1 on or about July 28, 2011 to Wilshire and Associates, Inc. for insufficient consideration; and

- $656,137,000 OFV of CUSIP 20173MBA7 on an unknown date.

52.    In furtherance of the scheme, BAWA, Morrison, Sherman, Brenner, and Deleon received $4.224B OFV of CUSIP 462264AAO and $4B OFV of CUSIP 44985FAA1 from Golden Summit at its brokerage account at Viewpoint and Penson on or about May 4, 2011, for grossly insufficient consideration. Then on July 5, 2011, they transferred these CMOs for no value to other accounts and closed its brokerage account at Viewpoint and Penson.

53.    In furtherance of the Golden Summit fraud, D. Coddington and Malouf as Extreme induced Financial Services Group LLC ("Financial Services") to transfer $1B OFV of CUSIP 462264AAO into the Golden Summit brokerage account at Viewpoint and Penson on June 14, 2011, for no value exchanged. Thereafter, D. Coddington and Malouf received at least $53,867 in interest payments from Financial Services' CMO. On or about October 10, 2011, Golden Summit, D. Coddington and Malouf transferred the CMO to a third party for insufficient or no consideration and without the knowledge and consent of Financial Service

54.    In furtherance of the fraud, D. Coddington misappropriated approximately $3M of creditors' funds, CMO interest payments and payments from Columbia from the liquidation of CMOs transferred to StoneRock.

55.    Erwin and Erwin Law misappropriated at least $800,000 of creditors' funds, most of which he transferred directly from the Erwin Law trust account.

56.    Malouf received approximately $77,000 in misappropriated funds of creditors.

57.    Leyton received approximately $86,000 in misappropriated creditors' funds and at least $45,000 from the improper sale of the creditors' CMOs.

58.    Michael and Joanna Columbia misappropriated approximately $3.4M in proceeds from the liquidation of the above described CMOs and taking for their personal use the CMO interest payments between December 2010 and August 2011.

59.    Coddington Family Trust received no less than $945,000 of creditors' funds from Extreme and Golden Summit accounts for which it provided no consideration.

60.    Scott Coddington received at least $640,000 of creditors' funds.

61.    Farris Co. and Farris received approximately $625,000 of creditors' funds from Golden Summit and $40,000 from Erwin Law trust account for which neither provided any consideration for the funds they received.

62.    Jimmy Richardson assisted StoneRock and the Columbias to acquire, liquidate and transfer the CMOs set out above. For this, Richardson received funds belonging to the creditors of this estate, for no consideration.

63.    In furtherance of the scheme, the CMOs were transferred to various third parties for insufficient consideration who received interest payments for the CMOs and then transferred the CMOs on to other third parties continuing up to the filing of this Second Amended Complaint.

64.     Two (2) of the CMOs being sought herein, were located at BMO Nesbitt Burns, following extensive discovery and forensic review of DTCC data and other information.  The CMOs currently located at BMO Nesbitt Burns are described as follows: (i) CUSIP No. **462264AA0**; and (ii) CUSIP No. **44985FAA1.**  These two (2) CMOs have been traced to the underlying fraud as set forth in the Trustee's initial and First Amended Complaint.  The Trustee seeks to claw-back these two CMOs and all interest payments received and/or held therefrom, in order to seek compensation for the investor/creditors who were defrauded and lost money and CMOs in the Golden Summit fraud and who are now unsecured creditors of this bankruptcy estate.

65.     Attached as **Exhibit 1** is a CMO Movement Timeline compiled from discovery received from both the Depository Trust & Clearing Corporation ("DTC"), which tracks the movement of the CMOs at issue, *CUSIP No. 462264AA0 and CUSIP No. 44985FAA1* from Golden Summit, to its last known location at BBH as of April 24, 2013.  Each transfer shown in the Movement Timeline corresponds with the underlying data and evidence under the "Comments" section of the Movement Timeline, where the exact data can be located within a particular exhibit that corresponds to the Movement Timeline.

66.     Attached as **Exhibit 1A** is the Golden Summit Statement of Account for the period, April 1, 2011 through April 30, 2011, from Viewpoint Securities, LLC (Penson), showing the acquisition of 4,000,000,000 shares of *CUSIP No. 44985FAA1* and 4,284,000,000 shares of *CUSIP No. 462246AA0* on April 25, 2011, by Defendant, Golden Summit (marked "**436**" at bottom, right corner of exhibit page);

67.     Attached as **Exhibit 1B** is the Golden Summit Statement of Account for the period, May 1, 2011 through May 31, 2011, from Viewpoint Securities, LLC (Penson), showing the transfer of 4,000,000,000 shares of *CUSIP No. 44985FAA1* and 4,284,000,000 shares of *CUSIP*

*No. 462246AA0* (Total of 8,284,000,000 shares) (marked **"449"** at bottom, right corner of exhibit page), as referenced in **Exhibit 1A,** on May 4, 2011 to Defendant BAWA, from Defendant, Golden Summit.

68.     Attached as **Exhibit 1C** is the BAWA Statement of Account for the period, July 1, 2010 through July 31, 2011, from Viewpoint Securities, LLC (Penson), showing BAWA holding the referenced 8,284,000,000 shares transferred by Golden Summit referenced in **Exhibit 1A and Exhibit 1B** and then, in conjunction with the attached **Exhibit 1D**, showing the subject 8,284,000,000 shares being transferred to BBH on May 5, 2010 from BAWA.

69.     Attached as **Exhibit 2A** is a Tracking Detail compiled from data provided to Trustee by the Depository Trust Company ("DTC")[1] for *CUSIP No. 462246AA0.* **Exhibit 2A** tracks each transfer of this particular CMO as shown on **Exhibit 1** and shows, by line number, the DTC Tracking Detail referenced in the Movement Timeline.  Attached as **Exhibit 2B** is a Tracking Detail compiled from data provided to Trustee by the Depository Trust Company ("DTC")[2] for *CUSIP No. 44985FAA1.* **Exhibit 2B** tracks each transfer of this particular CMO as shown on **Exhibit 1** and shows, by line number, the DTC Tracking Detail referenced in the Movement Timeline; and

70.     Attached as **Exhibit 3** is the DTC data from which the Tracking Detail appearing in **Exhibit 2A** and **Exhibit 2B** was extracted.

71.     Count IX of Trustee's Amended Complaint recites 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes* as the substantive basis for avoidance of the prepetition fraudulent

---

[1]  The Depository Trust Company is a New York corporation that performs the functions of a Central Securities Depository as part of the US National Market System. Since 1999 it has been a subsidiary of the Depository Trust & Clearing Corporation, a securities holding company.

[2]  The Depository Trust Company is a New York corporation that performs the functions of a Central Securities Depository as part of the US National Market System. Since 1999 it has been a subsidiary of the Depository Trust & Clearing Corporation, a securities holding company.

transfers and Count X recites 11 U.S.C. §§ 548 and 550 in support of the proposition that the interest payments from the CMOs, being sought herein, are also property of the bankruptcy estate subject to claw-back and turnover from the subsequent transferees.  In this regard, the Trustee seeks the CMOs with monthly all monthly interest payments paid over the years, to the current beneficial owner, Taylor Wilson, at BMO Nesbitt Burns and his solely-owned predecessor entity, Defendant 7608845 Canada Corp., an Ontario corporate entity.

## Count I: Alter Ego/Corporate Veil Piercing
**(Against Defendants Extreme Capital Ltd, Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf)**

72.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

73.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants the Coddington Family Trust, D. Coddington, S. Coddington and Malouf, and Defendant Extreme, which are alter egos of each other.

66.    As set forth above Defendant Extreme Capital Ltd. has no corporate existence or purpose that is legitimate or lawful.

67.    Defendant Extreme was formed solely as an instrumentality for Defendants the Coddington Family Trust, D. Coddington, S. Coddington and Malouf to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

68.    Because the Coddington Family Trust, D. Coddington, S. Coddington and Malouf formed and operated Defendant Extreme for an illegal purpose, and because Defendant Extreme

has had no legitimate or separate corporate existence, the separate existence of Defendant Extreme should be disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding the Coddington Family Trust, Daniel Dirk Coddington, Daniel Scott Coddington and Lewis P. Malouf liable for all debts owed by Defendant Extreme Capital Ltd., ordering all Extreme Capital Ltd.'s assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count II: Alter Ego/Corporate Veil Piercing
**(Against Defendants Aishwariya Enterprises, LLC and Vivek Chandrahasan)**

69.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

70.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Chandrahasan and Defendant Aishwariya, which are alter egos of each other.

71.    As set forth above Defendant Aishwariya has no corporate existence or purpose that is legitimate or lawful.

72.    Defendant Aishwariya was formed solely as an instrumentality for Defendant Chandrahasan to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

73.    Because Defendant Chandrahasan formed and operated Defendant Aishwariya for an illegal purpose, and because Defendant Aishwariya has had no legitimate or separate corporate existence, the separate existence of Defendant Aishwariya should be disregarded.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Vivek Chandrahasan liable for all debts owed by Defendant Aishwariya Enterprises, LLC, ordering all of Defendant Aishwariya Enterprises, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count III: Alter Ego/Corporate Veil Piercing
### (Against Defendants Viewpoint Securities LLC and Seth Leyton)

74.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

75.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Leyton and Defendant Viewpoint, which are alter egos of each other.

76.    As set forth above Defendant Viewpoint has no corporate existence or purpose that is legitimate or lawful.

77.    Defendant Viewpoint was formed solely as an instrumentality for Defendant Leyton to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

78.    Because Defendant Leyton formed and operated Defendant Viewpoint for an illegal purpose, and because Defendant Viewpoint has had no legitimate or separate corporate existence, the separate existence of Defendant Viewpoint should be disregarded.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Seth Leyton liable for all debts owed by Defendant Viewpoint

Securities, LLC, ordering all of Defendant Viewpoint Securities, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count IV: Alter Ego/Corporate Veil Piercing
### (Against Defendants Erwin Law Group, P.C., and Jesse Erwin)

79.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

80.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendant Erwin and Defendant Erwin Law which are alter egos of each other.

81.     As set forth above Defendant Erwin Law has no corporate existence or purpose that is legitimate or lawful.

82.     Defendant Erwin Law was formed solely as an instrumentality for Defendant Erwin to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

83.     Because Defendant Erwin formed and operated Defendant Erwin Law for an illegal purpose, and because Defendant Erwin Law has had no legitimate or separate corporate existence, the separate existence of Defendant Erwin Law should be disregarded.

    WHEREFORE, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Jesse Erwin liable for all debts owed by Defendant Erwin Law Group, P.C., ordering all of Defendant Erwin Law Group P.C.'s assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count V: Alter Ego/Corporate Veil Piercing
### (Against Defendants StoneRock Capital Group, LLC, Michael Columbia, and Joanna I. Columbia, (a/k/a Joanna I. Ornowska))

84.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

85.     This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants M. Columbia, J. Columbia, and Defendant StoneRock, which are alter egos of each other.

86.     As set forth above Defendant StoneRock has had no corporate existence or purpose that is legitimate or lawful.

87.     Defendant StoneRock was formed solely as an instrumentality for Defendants M. and J. Columbia to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

88.     Because Defendants M. and J. Columbia formed and operated Defendant StoneRock for an illegal purpose, and because Defendant StoneRock has no legitimate or separate corporate existence, the separate existence of Defendant StoneRock should be disregarded.

Wherefore, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendants Michael and Joanna Columbia liable for all debts owed by Defendant Stonerock Capital Group, LLC, ordering all of Defendant StoneRock Capital Group, LLC's assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count VI: Alter Ego/Corporate Veil Piercing
**(Against Defendants J.R. Richardson Investments and Jimmy L. Richardson)**

89.     The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

90.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Richardson and Defendant J.R. Richardson Investments, which are alter egos of each other.

91.    As set forth above Defendant J.R. Richardson Investments has had no corporate existence or purpose that is legitimate or lawful.

92.    Defendant J.R. Richardson Investments was formed solely as an instrumentality for Defendant Richardson to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

93.    Because Defendant Richardson formed and operated Defendant J.R. Richardson Investments for an illegal purpose, and because Defendant J.R. Richardson Investments has no legitimate or separate corporate existence, the separate existence of Defendant J.R. Richardson Investments should be disregarded.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendant Jimmy L. Richardson liable for all debts owed by Defendant J.R. Richardson Investments, ordering all of Defendant J.R. Richardson Investments' assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count VII: Alter Ego/Corporate Veil Piercing
**(Against Defendants BAWA Financial Ltd, John Andreas Morrison, Paul Sherman, Rafal Brenner and Sandra Josefa DeLeon)**

94.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

95.    This is an action by the Trustee for piercing the corporate veil/alter ego against Defendants Morrison, Sherman, Brenner, DeLeon and Defendant BAWA, which are alter egos of each other.

96.    As set forth above Defendant BAWA has no corporate existence or purpose that is legitimate or lawful.

97.    Defendant BAWA was formed solely as an instrumentality for Defendants Morrison, Sherman, Brenner, and DeLeon to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

98.    Because Defendants Morrison, Sherman, Brenner, and DeLeon formed and operated Defendant BAWA for an illegal purpose, and because Defendant BAWA has no legitimate or separate corporate existence, the separate existence of Defendant BAWA should be disregarded.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Defendants John Andres Morrison, Paul Sherman, Rafal Brenner, and Sandra Josefa DeLeon liable for all debts owed by Defendant BAWA Financial Ltd ordering all of Defendant BAWA Financial Ltd assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

## Count VIII: Alter Ego/Corporate Veil Piercing
### (Against 7608845 Canada Corp and Taylor Wilson)

99.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

100.    This is an action by the Trustee for piercing the corporate veil/alter ego against 7608845 Canada Corp. and Taylor Wilson, which are alter egos of each other.

101.    Defendant 7608845 Canada Corp. has no corporate existence or purpose that is legitimate or lawful.

102.    Defendant 7608845 Canada Corp. was formed solely as an instrumentality for Defendant Taylor Wilson to defraud and deprive creditors of the estate of millions of dollars related to the misappropriated and stolen assets and interest payments wrongfully received in connection with securities and other underlying assets that are the subject of the Complaint.

103.    Because Defendant Taylor Wilson formed and operated Defendant 7608845 Canada Corp. for an illegal purpose, and because Defendant 7608845 Canada Corp. has no legitimate or separate corporate existence, the separate existence of Defendant 7608845 Canada Corp. should be disregarded.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment piercing the corporate veil, holding Taylor Wilson liable for all debts owed by Defendant 7608845 Canada Corp., ordering all of Defendant 7608845 Canada Corp.'s assets to be included in the estate, and granting all other relief to which the Plaintiff may be justly entitled.

### Count IX: Avoidance of Fraudulent Transfers Pursuant to
### 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes*
### (Against All Defendants)

104.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

105.    The transfers set forth in paragraphs 1 through 68 constitute Fraudulent Transfers within the ambit and meaning of 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes* and are subject

to being set-aside and recovered by the Trustee for the benefit of the Marino bankruptcy estate and its' creditors.

WHEREFORE, the Trustee respectfully requests entry of judgment against all Defendants, setting-aside the transfers described hereinabove as fraudulent transfers and ordering the turnover to the bankruptcy estate of the subject CMOs or CLOs and all interest payments accruing to the putative beneficial owners thereof in accordance with 11 U.S.C. §§ 542, 543, 544, 548 and 550 and applicable law.

### **Count X: Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. § 548**
**(Against All Defendants and Amended to Include Additional Beneficial Owners)**

106.    The Trustee re-alleges and fully incorporates by reference the allegations set forth in paragraphs 1-68 of the Complaint as though fully set forth herein.

107.    To the extent any of the Transfers set forth in Paragraphs 1-68 are found to be Fraudulent Transfers within the meaning of 11 U.S.C. § 548 and/or § 726.105, *Florida Statutes*, each and every CMO identified as being fraudulently transferred constitutes property of this bankruptcy estate and must be turned-over to the Trustee, immediately, along with any and all accrued interest payments and the right to receive any further interest payments on each such CMO found to have been fraudulently transferred.  In addition, all interest payments previously received on the account of any such fraudulently transferred CMO, must be repaid to the Trustee.

WHEREFORE, the Chapter 7 Trustee, Margaret J. Smith, respectfully requests entry of judgment against all Defendants, setting-aside the transfers described hereinabove as fraudulent transfers and ordering the turnover to the bankruptcy estate of the subject CMOs or CLOs and all interest payments, past, present and future, accruing to the putative beneficial owners thereof in accordance with 11 U.S.C. §§ 542, 543, 544, 548 and 550 and applicable law.

Dated this 5th day of August, 2022.

Respectfully submitted,

**LUBELL|ROSEN**
Museaum Plaza, Suite 900, 9th Floor
200 South Andrews Avenue
Ft. Lauderdale, Florida 33301
Tel. (954) 880-9500
Fax (954) 755-2993
Email: snewburgh@lubellrosen.com
*Counsel for Trustee, Margaret J. Smith*

By: */s/ Steven S. Newburgh*
    STEVEN S. NEWBURGH
    Florida Bar No. 0348619

# EXHIBIT 1

**Exhibit 1**

**Adv. No. 15-01466-MAM**

## Cusip Number 466264AA0  Movement Timeline

| Date | Holder | Supporting Documentation Reference | Comments |
|---|---|---|---|
| 4/30/2011 | Golden Summit | Exhibit 1A | Golden Summit holds CMO |
| 5/4/2011 | BAWA | Exhibits 1B and 1D | Golden Summit  transfers/sells CMO to BAWA |
| 7/5/2011 | Brown Brothers | Exhibits 1C and 2A | BAWA (held at Penson) transfers to Brown Brothers, line 10 |
| 8/24/2011 | UBS | Exhibit 2A | Brown Brothers transfers to UBS, line 11 |
| 9/23/2011 | Brown Brothers | Exhibit 2A | UBS transfers to Brown Brothers, line 12 |
| 10/24/2011 | BMO Nesbitt | Exhibit 2A | Brown Brothers transfers to BMO, line 13 |
| 4/24/2013 | Brown Brothers | Exhibit 2A | BMO transfers to Brown Brothers, line 31 |

## Cusip Number 44985FAA1  Movement Timeline

| Date | Holder | Supporting Documentation Reference | Comments |
|---|---|---|---|
| 4/30/2011 | Golden Summit | Exhibit 1A | Golden Summit holds CMO |
| 5/4/2011 | BAWA | Exhibits 1B and 1D | Golden Summit  transfers/sells CMO to BAWA |
| 7/5/2011 | Brown Brothers | Exhibits 1C and 2B | BAWA (held at Penson) transfers to Brown Brothers, line 3 |
| 8/24/2011 | UBS | Exhibit 2B | Brown Brothers transfers to UBS, line 4 |
| 9/23/2011 | Brown Brothers | Exhibit 2B | UBS transfers to Brown Brothers, line 5 |
| 10/24/2011 | BMO | Exhibit 2B | Brown Brorthers transfers to BMO, line 6 |
| 4/24/2013 | Brown Brothers | Exhibit 2B | BMO transfers to Brown Brothers, line 24 |

# EXHIBIT 1A

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1A**
# Statement of Account

**GOLDEN SUMMIT INVESTORS GROUP LTD II**
**3578 HARTSEL DRIVE UNIT E #339**
**COLORADO SPRINGS CO  80920**

**Account Information**

| Account Number: | ████1452 |
| Financial Advisor #: | VP01 |

**Your Financial Advisor**

**SETH LEYTON**
**(858) 480-2800**

**Statement Period**

**April 1, 2011 to April 30, 2011**

**Office Serving You**

**401 West A Street**
**Suite 325**
**San Diego, CA  92101**
**(619) 272-2810**

## Account Value

| Asset Category | Current Value 04/30/11 | Prior Value 03/31/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Cash Account Balance | 772,650.12 | 0.00 | 23.61% | | |
| Fixed Income | 2,500,040.97 | 0.00 | 76.39% | 520,728.53 | 20.83% |
| Total: Portfolio Values | 3,272,691.09 | 0.00 | 100.00% | 520,728.53 | 15.91% |
| Total Account Value | 3,272,691.09 | 0.00 | 100.00% | 520,728.53 | 15.91% |

## Asset Allocation



CASH + MNYMKT
23.61%

FIXED INCOME
76.39%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Total: Income | 0.00 | 0.00 |

Exhibit 1A

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1.   Definitions.  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account.  "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

2.   Payment of Indebtedness Upon Demand.  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3.   Security Interest; Liquidation.  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine.  Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4.   Lending Agreement; Margin or Short Accounts.  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities.  The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5.   Account Carried as Clearing Broker.  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account.  The

5.   (continued)
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker to and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

6.   ARBITRATION AGREEMENT.  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7.   Other Agreements; Option Transactions, Charges.  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

8.   Option Account.  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9.   Miscellaneous.  Customer's financial statement is available for personal inspection or will be mailed on the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1A**
# Statement of Account

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | | | **Account Information** | | | **Statement Period** | | |
| | | | Account Number:      ■1452 | | | April 1, 2011 to April 30, 2011 | | |

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Cash | | Cash | | | 772,650.12 | 23.61% | | |
| **Total: Cash & Equivalents** | | | | | **772,650.12** | **23.61%** | | |
| | | | | | | | | |
| **Fixed Income** | | | | | | | | |
| IOTA SBA COOF TR SER 2010-B PA | 44985FAA1 | Cash | 4,000,000,000 | N/A | | | | |
| SS THRU CTF CL A-1 144A | | | | | | | | |
| RATE:  0.000000    MATURITY: 10/10/35 | | | | | | | | |
| IOTA SBA COOF TR SER 2010-A PA | 462264AA0 | Cash | 4,284,000,000 | 0.0625 | 2,500,040.97 | 76.39% | 520,728.53 | 20.83% |
| SS THRU CTF CL A 144A | | | | | | | | |
| **** DO NOT MARGIN | | | | | | | | |
| RATE:  0.013018    MATURITY: 11/25/35 | | | | | | | | |
|     Factor: | 0.93372212 | | | | | | | |
|     Current Face: | 65562.08 | | | | | | | |
| **Total: Fixed Income** | | | | | **2,500,040.97** | **76.39%** | **520,728.53** | **20.83%** |
| | | | | | | | | |
| **Total: Account Net Assets/Equity** | | | | | **3,272,691.09** | **100.00** | **520,728.53** | **15.91%** |

*Account value and totals are based only on priced securities.  We may be unable to price all securities in your account.  For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide.  They do not necessarily reflect actual market prices.  For current prices, please contact your financial consultant.*

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

Exhibit 1A
**Statement of Account**

| GOLDEN SUMMIT INVESTORS GROUP LTD II | Account Information | Statement Period |
|---|---|---|
| | Account Number: ████ 1452 | April 1, 2011 to April 30, 2011 |

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | 0.00 |
| | 04/21/11 | Cash | Journal | | W/T FRM CUST:11321452 | | 7,000,000.00 |
| | 04/25/11 | Cash | Buy Cancelled | -284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 205,282.68 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | 361,411.65 |
| | 04/25/11 | Cash | Bought | 284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (205,282.68) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1A**
# Statement of Account

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **GOLDEN SUMMIT INVESTORS GROUP LTD II** | | | **Account Information** | | **Statement Period** | |
| | | | | Account Number: ████ 1452 | | April 1, 2011 to April 30, 2011 | |

**Account Activity**

| | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (361,411.65) |
| | 04/25/11 | Cash | Bought | 284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (204,238.76) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1A**
## Statement of Account

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | | | | **Account Information** | | **Statement Period** | |
| | | | | Account Number: ▮1452 | | April 1, 2011 to April 30, 2011 | |

**Account Activity**

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.07813 | (359,573.77) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O0940 | 0.07969 | (393,315.12) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O0941 | 0.07969 | (393,315.12) |
| 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O0942 | 0.07969 | (393,315.12) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1A**
## Statement of Account

| | | | Account Information | | Statement Period | |
|---|---|---|---|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | | | Account Number: ████1452 | | April 1, 2011 to April 30, 2011 | |

**Account Activity**

| | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O0943 | 0.07969 | (393,315.12) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O0945 | 0.07969 | (393,315.12) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O0960 | 0.07969 | (393,315.12) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O1066 | 0.07969 | (393,315.12) |
| | 04/25/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O1169 | 0.07969 | (393,315.12) |
| **Total: Cash Account Balance** | | | | | | | **772,650.12** |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1A**
**Statement of Account**

| | | |
|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | **Account Information**<br>Account Number: ▬1452 | **Statement Period**<br>April 1, 2011 to April 30, 2011 |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 6,227,349.88 | *TOTAL SHARES PURCHASED:* | 8,284,000,000.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically.  Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available).  In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures.  For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price.  In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report.  However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.  Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders.  For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule.  This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM').  TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# EXHIBIT 1B

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1B**
# Statement of Account

| Account Information | | Statement Period | |
|---|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | Account Number: ███1452 | **May 1, 2011 to May 31, 2011** | |
| **3578 HARTSEL DRIVE UNIT E #339** | Financial Advisor #:  VP01 | | |
| **COLORADO SPRINGS CO  80920** | | | |
| | Your Financial Advisor | Office Serving You | |
| | **SETH LEYTON** | **401 West A Street** | |
| | **(858) 480-2800** | **Suite 325** | |
| | | **San Diego, CA  92101** | |
| | | **(619) 272-2810** | |

## Account Value

| Asset Category | Current Value 05/31/11 | Prior Value 04/29/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Cash Account Balance | 10,715.29 | 772,650.12 | 100.00% | | |
| Fixed Income | 0.00 | 2,500,040.97 | | | |
| **Total: Portfolio Values** | **10,715.29** | **3,272,691.09** | **100.00%** | | |
| **Total Account Value** | **10,715.29** | **3,272,691.09** | **100.00%** | | |

## Asset Allocation

CASH + MNYMKT
100.00%



## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Accrued Interest | 32,341.28 | 32,341.28 |
| **Total: Income** | **32,341.28** | **32,341.28** |

**Exhibit 1B**

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.** The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.** The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You: (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**5.   (continued)**
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;
b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;
d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement.  The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed on the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You.  You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

443

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA 92101
(619) 272-2810

**Exhibit 1B**
# Statement of Account

| | | |
|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | **Account Information** | **Statement Period** |
| | Account Number: ████ 1452 | May 1, 2011 to May 31, 2011 |

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Cash | | Cash | | | 10,715.29 | 100.00 | | |
| Total: Cash & Equivalents | | | | | 10,715.29 | 100.00 | | |
| | | | | | | | | |
| Total: Account Net Assets/Equity | | | | | 10,715.29 | 100.00 | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | 772,650.12 |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1B**
## Statement of Account

| | | |
|---|---|---|
| GOLDEN SUMMIT INVESTORS GROUP LTD II | **Account Information** | **Statement Period** |
| | Account Number: ■1452 | May 1, 2011 to May 31, 2011 |

**Account Activity**

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (990.35) |
| 05/04/11 | Cash | Sell Cancelled | 284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (970.47) |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA 92101
(619) 272-2810

**Exhibit 1B**
# Statement of Account

| GOLDEN SUMMIT INVESTORS GROUP LTD II | Account Information | Statement Period |
|---|---|---|
| | Account Number: ▮▮▮1452 | May 1, 2011 to May 31, 2011 |

**Account Activity**

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.09 |
| 05/04/11 | Cash | Sold | -284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,644.21 |
| 05/04/11 | Cash | Sold | -284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 970.47 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA 92101
(619) 272-2810

**Exhibit 1B**
## Statement of Account

| | GOLDEN SUMMIT INVESTORS GROUP LTD II | Account Information | Statement Period |
|---|---|---|---|
| | | Account Number: ████1452 | May 1, 2011 to May 31, 2011 |

**Account Activity**

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 990.35 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3242 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3243 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3244 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3245 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3246 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3247 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3248 | 0.00001 | 2,267.28 |
| 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3249 | 0.00001 | 2,267.28 |
| 05/13/11 | Cash | Journal | | DOMESTIC WIRE FEE | | (15.00) |
| 05/13/11 | Cash | Journal | | WIRE TRANSFER | | (445,000.00) |
| 05/17/11 | Cash | Journal | | DOMESTIC WIRE FEE | | (15.00) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1B**
# Statement of Account

| | Account Information | | Statement Period |
|---|---|---|---|
| **GOLDEN SUMMIT INVESTORS GROUP LTD II** | Account Number: ▮1452 | | **May 1, 2011 to May 31, 2011** |

## Account Activity

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 05/17/11 | Cash | Journal | | WIRE TRANSFER | | (350,000.00) |
| **Total: Cash Account Balance** | | | | | | **10,715.29** |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1B**
**Statement of Account**

---

**GOLDEN SUMMIT INVESTORS GROUP LTD II**

**Account Information**

Account Number: ▮▮▮▮1452

**Statement Period**
May 1, 2011 to May 31, 2011

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 33,095.17 | *TOTAL SHARES SOLD:* | 8,284,000,000.00 |

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically.  Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available).  In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures.  For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price.  In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report.  However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.  Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders.  For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule.  This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM').  TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# EXHIBIT 1C

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA 92101
(619) 272-2810

**Exhibit 1C**
## Statement of Account

BAWA FINANCIAL LTD
19 CROMWELL TERRACE
CHATHAM KENT ME4 5PQ
UNITED KINGDOM

**Account Information**

| | |
|---|---|
| Account Number: | ████1338 |
| Financial Advisor #: | VP01 |

**Your Financial Advisor**

SETH LEYTON
(858) 480-2800

**Statement Period**

**July 1, 2011 to July 31, 2011**

**Office Serving You**

401 West A Street
Suite 325
San Diego, CA 92101
(619) 272-2810

### Account Value

| Asset Category | Current Value 07/31/11 | Prior Value 06/30/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Cash Account Balance | 0.00 | 92,509.73 | | | |
| Fixed Income | 0.00 | 2,500,040.97 | | | |
| Total: Portfolio Values | 0.00 | 2,592,550.70 | | | |
| Total Account Value | 0.00 | 2,592,550.70 | | | |

### Asset Allocation

### Income Summary

| | This Period | Year to Date |
|---|---|---|
| Taxable Interest | 0.00 | 202,089.92 |
| Total: Income | 0.00 | 202,089.92 |

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**  "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account.  "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine.  Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities.  The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account.  The

**5.   (continued)**  Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE.  THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement.  The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.   All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed on the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any put or call option included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA 92101
(619) 272-2810

**Exhibit 1C**
# Statement of Account

| | Account Information | Statement Period |
|---|---|---|
| **BAWA FINANCIAL LTD** | Account Number: ▆1338 | **July 1, 2011 to July 31, 2011** |

## Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Cash | | Cash | | | 0.00 | | | |
| **Total: Cash & Equivalents** | | | | | **0.00** | | | |
| **Total: Account Net Assets/Equity** | | | | | **0.00** | | | |

*Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.*

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | 92,509.73 |
| | 07/01/11 | Cash | Delivered | -284,000,000 | IOTA SBA COOF TR SER 2010-A PA | | |
| | | | | | SS THRU CTF CL A 144A | | |
| | | | | | **** DO NOT MARGIN | | |
| | | | | | DTC DELV TO#10 | | |
| | 07/05/11 | Cash | Delivered | -4,000,000,000 | IOTA SBA COOF TR SER 2010-B PA | | |
| | | | | | SS THRU CTF CL A-1 144A | | |
| | | | | | DTC DELV TO#10_7/1 | | |
| | 07/05/11 | Cash | Delivered | -4,000,000,000 | IOTA SBA COOF TR SER 2010-A PA | | |
| | | | | | SS THRU CTF CL A 144A | | |
| | | | | | **** DO NOT MARGIN | | |
| | | | | | DTC DELV TO#10 7/1 | | |
| | 07/05/11 | Cash | Journal | | W/T 11321338 | | (85,000.00) |
| | 07/06/11 | Cash | Received | 500,000,000 | GS MTG SECS TR 2007 GG10 MTG P | | |
| | | | | | ASS THRU CTF CL X 144A | | |
| | | | | | **** DO NOT MARGIN | | |
| | | | | | DTC DK'D 6/30 | | |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1C**
## Statement of Account

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **BAWA FINANCIAL LTD** | | | **Account Information** | | | **Statement Period** | |
| | | | | Account Number: ▮1338 | | | July 1, 2011 to July 31, 2011 | |

**Account Activity**

| | Entry/Trade Date | Account Type | Transaction | Quantity | Description | | Price | Amount |
|---|---|---|---|---|---|---|---|---|
| | 07/06/11 | Cash | Received | 325,000,000 | J P MORGAN CHASE COML MTG SECS | | | |
| | | | | | TR 2007-LDP 11 MTG PASS THRU | | | |
| | | | | | CTF-CL X VAR | | | |
| | | | | | DTC DK'D 6/30 | | | |
| | 07/08/11 | Cash | Journal | | DTC FEE | | | (25.00) |
| | 07/08/11 | Cash | Delivered | -500,000,000 | GS MTG SECS TR 2007 GG10 MTG P | | | |
| | | | | | ASS THRU CTF CL X 144A | | | |
| | | | | | **** DO NOT MARGIN | | | |
| | | | | | DTC DELV TO#10 | | | |
| | 07/08/11 | Cash | Delivered | -325,000,000 | J P MORGAN CHASE COML MTG SECS | | | |
| | | | | | TR 2007-LDP 11 MTG PASS THRU | | | |
| | | | | | CTF-CL X VAR | | | |
| | | | | | DTC DELV TO#10 | | | |
| | 07/21/11 | Cash | Journal | | INTL WIRE FEE | | | (50.00) |
| | 07/21/11 | Cash | Journal | | W/T 11321338 | | | (7,434.73) |
| **Total: Cash Account Balance** | | | | | | | | **0.00** |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1C**
# Statement of Account

---

**BAWA FINANCIAL LTD**

| Account Information | Statement Period |
|---|---|
| Account Number: ▮1338 | July 1, 2011 to July 31, 2011 |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 0.00 | *TOTAL SHARES PURCHASED:* | 0.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically.  Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available).  In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures.  For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price.  In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report.  However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.  Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders.  For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule.  This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM').  TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# EXHIBIT 1D

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA 92101
(619) 272-2810

**Exhibit 1D**
# Statement of Account

BAWA FINANCIAL LTD
19 CROMWELL TERRACE
CHATHAM KENT ME4 5PQ
UNITED KINGDOM

### Account Information

| | |
|---|---|
| Account Number: | ▮1338 |
| Financial Advisor #: | VP01 |

### Your Financial Advisor

SETH LEYTON
(858) 480-2800

### Statement Period

May 1, 2011 to May 31, 2011

### Office Serving You

401 West A Street
Suite 325
San Diego, CA 92101
(619) 272-2810

## Account Value

| Asset Category | Current Value 05/31/11 | Prior Value 04/29/11 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Cash Account Balance | 88,972.83 | 5,206.18 | 3.22% | | |
| Fixed Income | 2,672,672.94 | 173,174.68 | 96.78% | 520,728.53 | 19.48% |
| **Total: Portfolio Values** | **2,761,645.77** | **178,380.86** | **100.00%** | **520,728.53** | **18.86%** |
| **Total Account Value** | **2,761,645.77** | **178,380.86** | **100.00%** | **520,728.53** | **18.86%** |

## Asset Allocation



CASH + MNYMKT
3.22%

FIXED INCOME
96.78%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Taxable Interest | 91,949.51 | 97,155.69 |
| **Total: Income** | **91,949.51** | **97,155.69** |

**Exhibit 1D**

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

**1.   Definitions.**   "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts.  "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more.  "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising.  "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  "You" or "Your" refers to Penson Financial Services, Inc.

**2.   Payment of Indebtedness Upon Demand.**  The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

**3.   Security Interest; Liquidation.**  All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law.  You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (a) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.  You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

**4.   Lending Agreement; Margin or Short Accounts.**  With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas.  With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier Point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein.  You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

**5.   Account Carried as Clearing Broker.**  The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You.  The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account.  Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker.  If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX  75201, (214) 765-1100, and speak with the Compliance Department.  The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account.  Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing broker and its representatives employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

**5.   (continued)**
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker.  The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker.  The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents.  The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account.  The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c.   THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d.   THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e.   THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f.   THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g.   THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

**6.   ARBITRATION AGREEMENT.**  ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.   Other Agreements; Option Transactions, Charges.**  The Customer agrees to be bound by the terms of Your Customer Account Agreement.  If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement.  If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer.  You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as Independently established by You.

**8.   Option Account.**  Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise.  All American short option positions are subject to assignment at any time.  A more detailed description of Your random allocation procedure is available upon request.  In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation.  Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request.  The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

**9.   Miscellaneous.**  Customer's financial statement is available for personal inspection or will be mailed on the Customer's request.  The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative.  This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above.  With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934.  The Customer may receive those funds in the normal course of business following demand to You.  You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control.  The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer.  The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1D**
## Statement of Account

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **BAWA FINANCIAL LTD** | | **Account Information** | | | | **Statement Period** | | |
| | | **Account Number:** | **11321338** | | | **May 1, 2011 to May 31, 2011** | | |

### Portfolio Positions

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| Cash | | Cash | | | 88,972.83 | 3.22% | | |
| **Total: Cash & Equivalents** | | | | | **88,972.83** | **3.22%** | | |

**Fixed Income**

| Cash & Equivalents | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| GS MTG SECS TR 2007 GG10 MTG P ASS THRU CTF CL X 144A **** DO NOT MARGIN RATE: 0.000000   MATURITY: 08/10/45 Factor:   0.98049438 Current Face: 490247190.00 | 36246LAP6 | Cash | 500,000,000 | N/A | | | | |
| IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A RATE: 0.000000   MATURITY: 10/10/35 | 44985FAA1 | Cash | 4,000,000,000 | N/A | | | | |
| IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN RATE: 0.013018   MATURITY: 11/25/35 Factor:   0.93372212 Current Face:   65562.08 | 462264AA0 | Cash | 4,284,000,000 | 0.0625 | 2,500,040.97 | 90.53% | 520,728.53 | 20.83% |
| J P MORGAN CHASE COML MTG SECS TR 2007-LDP 11 MTG PASS THRU CTF-CL X VAR RATE: 0.000000   MATURITY: 07/15/45 Factor:   0.98365797 Current Face: 319688840.25 | 46631BAH8 | Cash | 325,000,000 | 0.054 | 172,631.97 | 6.25% | | |
| **Total: Fixed Income** | | | | | **2,672,672.94** | **96.78%** | **520,728.53** | **19.48%** |
| **Total: Account Net Assets/Equity** | | | | | **2,761,645.77** | **100.00** | **520,728.53** | **18.86%** |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1D**
# Statement of Account

| | | |
|---|---|---|
| **BAWA FINANCIAL LTD** | **Account Information** | **Statement Period** |
| | Account Number: ████1338 | May 1, 2011 to May 31, 2011 |

*Account value and totals are based only on priced securities.  We may be unable to price all securities in your account.  For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide.  They do not necessarily reflect actual market prices.  For current prices, please contact your financial consultant.*

## Account Activity

| Cash Account | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | | Cash | | | OPENING BALANCE | | 5,206.18 |
| | 05/04/11 | Cash | Sell Cancelled | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,664.77) |
| | 05/04/11 | Cash | Buy Cancelled | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,668.77 |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.77) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 284,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (974.47) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1D**
# Statement of Account

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **BAWA FINANCIAL LTD** | | **Account Information** | | | **Statement Period** | |
| | | | Account Number: ▮▮▮1338 | | | May 1, 2011 to May 31, 2011 | |

**Account Activity**

| | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Sold | -500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | 1,664.77 |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | 0.00001 | (1,668.09) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3250 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3251 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3252 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3253 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3254 | 0.00001 | (2,271.28) |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1D**
# Statement of Account

| | | BAWA FINANCIAL LTD | **Account Information** | | | **Statement Period** | |
|---|---|---|---|---|---|---|---|
| | | | Account Number: ▉1338 | | | May 1, 2011 to May 31, 2011 | |

## Account Activity

| | Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|---|
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3256 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3257 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Bought | 500,000,000 | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A O3258 | 0.00001 | (2,271.28) |
| | 05/04/11 | Cash | Journal | | W/T AO 5/3 FR CUST | | 358,375.00 |
| | 05/04/11 | Cash | Journal | | W/T FRM CUST:11321338 | | 33,000.00 |
| | 05/06/11 | Cash | Bought | 500,000,000 | GS MTG SECS TR 2007 GG10 MTG P ASS THRU CTF CL X 144A **** DO NOT MARGIN | 0.0705 | (350,763.81) |
| | 05/13/11 | Cash | Interest | | GS MTG SECS TR 2007 GG10 MTG P ASS THRU CTF CL X 144A **** DO NOT MARGIN | | 3,179.00 |
| | 05/13/11 | Cash | Interest | | GS MTG SECS TR 2007 GG10 MTG P ASS THRU CTF CL X 144A **** DO NOT MARGIN | | (3,179.00) |
| | 05/17/11 | Cash | Interest | | J P MORGAN CHASE COML MTG SECS TR 2007-LDP 11 MTG PASS THRU CTF-CL X VAR | | 2,976.68 |
| | 05/23/11 | Cash | Journal | | INTL WIRE FEE | | (50.00) |
| | 05/24/11 | Cash | Journal | | W/T 11321338 | | (16,254.62) |
| | 05/25/11 | Cash | Interest | | IOTA SBA COOF TR SER 2010-B PA SS THRU CTF CL A-1 144A | | 46,060.00 |
| | 05/26/11 | Cash | Interest | | IOTA SBA COOF TR SER 2010-A PA SS THRU CTF CL A 144A **** DO NOT MARGIN | | 42,912.83 |
| **Total: Cash Account Balance** | | | | | | | **88,972.83** |

**Viewpoint Securities LLC**
401 West A Street, Suite 325
San Diego, CA  92101
(619) 272-2810

**Exhibit 1D**
## Statement of Account

---

BAWA FINANCIAL LTD

**Account Information**

Account Number: ████1338

**Statement Period**

May 1, 2011 to May 31, 2011

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| *TOTAL PURCHASED (USD):* | 383,253.24 | *TOTAL SHARES PURCHASED:* | 8,784,000,000.00 |
| *TOTAL SOLD (USD):* | 0.00 | *TOTAL SHARES SOLD:* | 0.00 |

*It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically.  Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available).  In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.*

*Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures.  For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.*

*DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price.  In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report.  However, in some cases accurate valuation information is not available and will not be provided.*

*FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.*
*http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf*

*When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.  Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.*

*Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders.  For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule.  This information can be accessed on the internet at:  ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.*

*SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."*

*FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM').  TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com*

**\* End of Statement \***

# EXHIBIT 2A

Exhibit 2A

**Adv. No. 15-01466-MAM**

**Cusip Number 462264AA0 Tracking Detail**

**Source**: DTC Data Report allocating monthly interest

| LINE | REC DATE | PAY DATE | ALLOC DATE | PART ID | PART NAME | INTEREST ALLOCATED | ALLOCATION % | PART ID | PART NAME | INTEREST ALLOCATED | ALLOCATION % | TOTAL ALLOCATION | 100% |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 10/22/2010 | 10/25/2010 | 10/25/2010 | 00000234 | PENSON | 70,590.00 | 45.8% | | | | | 154,016.55 | 100% |
| 2 | 11/24/2010 | 11/25/2010 | 11/26/2010 | 00000234 | PENSON | 68,600.00 | 53.5% | | | | | 128,292.58 | 100% |
| 3 | 12/24/2010 | 12/25/2010 | 12/27/2010 | 00000234 | PENSON | 67,697.00 | 53.5% | | | | | 126,603.83 | 100% |
| 4 | 1/24/2011 | 1/25/2011 | 1/25/2011 | 00000234 | PENSON | 72,842.00 | 53.5% | | | | | 136,225.78 | 100% |
| 5 | 2/24/2011 | 2/25/2011 | 2/25/2011 | 00000234 | PENSON | 72,772.00 | 53.5% | | | | | 136,094.86 | 100% |
| 6 | 3/24/2011 | 3/25/2011 | 3/25/2011 | 00000234 | PENSON | 65,408.00 | 53.5% | | | | | 122,323.04 | 100% |
| 7 | 4/22/2011 | 4/25/2011 | 4/25/2011 | 00000234 | PENSON | 59,971.13 | 54.4% | | | | | 110,187.62 | 100% |
| 8 | 5/24/2011 | 5/25/2011 | 5/25/2011 | 00000234 | PENSON | 75,644.00 | 57.7% | | | | | 131,133.34 | 100% |
| 9 | 6/24/2011 | 6/25/2011 | 6/27/2011 | 00000234 | PENSON | 61,379.64 | 50.9% | | | | | 120,621.21 | 100% |
| 10 | 7/22/2011 | 7/25/2011 | 7/25/2011 | 00000234 | PENSON | 18,726.00 | 15.3% | 00000010 | BROWN BROS | 40,111.09 | 32.7% | 122,571.78 | 100% |
| 11 | 8/24/2011 | 8/25/2011 | 8/25/2011 | 00000234 | PENSON | 19,248.00 | 15.3% | 00000221 | UBS FINAN | 42,191.62 | 33.5% | 125,988.55 | 100% |
| 12 | 9/23/2011 | 9/25/2011 | 9/26/2011 | 00000234 | PENSON | 16,042.00 | 15.3% | 00000010 | BROWN BROS | 34,361.96 | 32.7% | 105,003.54 | 100% |
| 13 | 10/24/2011 | 10/25/2011 | 10/25/2011 | 00000158 | APEX CLEAR | 20,820.00 | 15.3% | 00000010 | BROWN BROS | 44,596.44 | 32.7% | 136,278.13 | 100% |
| 14 | 11/23/2011 | 11/25/2011 | 11/25/2011 | 00000158 | APEX CLEAR | 16,726.00 | 15.3% | 0005043 | BMO NSBT** | 27,464.09 | 25.1% | 109,480.69 | 100% |
| 15 | 12/23/2011 | 12/25/2011 | 12/27/2011 | 00000158 | APEX CLEAR | 18,546.00 | 15.3% | 0005043 | BMO NSBT** | 30,452.53 | 25.1% | 121,393.58 | 100% |
| 16 | 1/24/2012 | 1/25/2012 | 1/25/2012 | 00000158 | APEX CLEAR | 15,444.00 | 15.3% | 0005043 | BMO NSBT** | 25,359.05 | 25.1% | 101,089.31 | 100% |
| 17 | 2/24/2012 | 2/25/2012 | 2/27/2012 | 00000158 | APEX CLEAR | 24,324.00 | 15.3% | 0005043 | BMO NSBT** | 39,940.01 | 25.1% | 159,213.70 | 100% |
| 18 | 3/23/2012 | 3/25/2012 | 3/26/2012 | 00000158 | APEX CLEAR | 17,822.00 | 15.3% | 0005043 | BMO NSBT** | 29,263.72 | 25.1% | 116,654.60 | 100% |
| 19 | 4/24/2012 | 4/25/2012 | 4/25/2012 | 00000158 | APEX CLEAR | 15,282.00 | 15.3% | 0005043 | BMO NSBT** | 25,093.04 | 25.1% | 100,028.93 | 100% |
| 20 | 5/24/2012 | 5/25/2012 | 5/25/2012 | 00000158 | APEX CLEAR | 17,884.00 | 15.3% | 0005043 | BMO NSBT** | 29,365.53 | 25.1% | 117,060.44 | 100% |
| 21 | 6/22/2012 | 6/25/2012 | 6/25/2012 | 00000158 | APEX CLEAR | 17,158.00 | 15.3% | 0005043 | BMO NSBT** | 28,173.44 | 25.1% | 112,308.37 | 100% |
| 22 | 7/24/2012 | 7/25/2012 | 7/25/2012 | 00000158 | APEX CLEAR | 15,410.00 | 15.3% | 0005043 | BMO NSBT** | 25,303.22 | 25.1% | 100,866.76 | 100% |
| 23 | 8/24/2012 | 8/25/2012 | 8/27/2012 | 00000158 | APEX CLEAR | 16,080.00 | 15.3% | 0005043 | BMO NSBT** | 26,403.36 | 25.1% | 105,252.28 | 100% |
| 24 | 9/24/2012 | 9/25/2012 | 9/25/2012 | 00000158 | APEX CLEAR | 16,118.00 | 15.3% | 0005043 | BMO NSBT** | 26,465.76 | 25.1% | 105,501.01 | 100% |
| 25 | 10/24/2012 | 10/25/2012 | 10/25/2012 | 00000158 | APEX CLEAR | 15,634.00 | 15.3% | 0005043 | BMO NSBT** | 25,671.03 | 25.1% | 102,332.96 | 100% |
| 26 | 11/23/2012 | 11/25/2012 | 11/26/2012 | 00000158 | APEX CLEAR | 14,462.00 | 15.3% | 0005043 | BMO NSBT** | 23,746.60 | 25.1% | 94,661.59 | 100% |
| 27 | 12/24/2012 | 12/25/2012 | 12/26/2012 | 00000158 | APEX CLEAR | 15,606.60 | 15.3% | 0005043 | BMO NSBT** | 25,625.05 | 25.1% | 102,149.68 | 100% |
| 28 | 1/24/2013 | 1/25/2013 | 1/25/2013 | 00000158 | APEX CLEAR | 13,154.00 | 15.3% | 0005043 | BMO NSBT** | 21,598.87 | 25.1% | 86,100.03 | 100% |
| 29 | 2/22/2013 | 2/25/2013 | 2/25/2013 | 00000158 | APEX CLEAR | 16,024.00 | 15.3% | 0005043 | BMO NSBT** | 26,311.41 | 25.1% | 104,885.74 | 100% |
| 30 | 3/22/2013 | 3/25/2013 | 3/25/2013 | 00000158 | APEX CLEAR | 14,028.00 | 15.3% | 0005043 | BMO NSBT** | 23,033.98 | 25.1% | 91,820.84 | 100% |
| 31 | 4/24/2013 | 4/25/2013 | 4/25/2013 | 00000158 | APEX CLEAR | 11,642.00 | 15.3% | 00000010 | BROWN BROS | 19,116.16 | 25.1% | 76,203.17 | 100% |
| 32 | 5/24/2013 | 5/25/2013 | 5/28/2013 | 00000158 | APEX CLEAR | 17,552.00 | 15.3% | 00000010 | BROWN BROS | 28,820.38 | 25.1% | 114,887.31 | 100% |
| 33 | 6/24/2013 | 6/25/2013 | 6/25/2013 | 00000158 | APEX CLEAR | 14,488.00 | 15.3% | 00000010 | BROWN BROS | 23,789.30 | 25.1% | 94,831.78 | 100% |
| 34 | 7/24/2013 | 7/25/2013 | 7/25/2013 | 00000158 | APEX CLEAR | 13,152.00 | 15.3% | 00000010 | BROWN BROS | 21,595.58 | 25.1% | 86,086.94 | 100% |
| 35 | 8/23/2013 | 8/25/2013 | 8/26/2013 | 00000158 | APEX CLEAR | 13,044.00 | 15.3% | 00000010 | BROWN BROS | 21,418.25 | 25.1% | 85,380.01 | 100% |
| 36 | 9/24/2013 | 9/25/2013 | 9/25/2013 | 00000158 | APEX CLEAR | 13,854.00 | 15.3% | 00000010 | BROWN BROS | 22,748.27 | 25.1% | 90,681.91 | 100% |
| 37 | 10/24/2013 | 10/25/2013 | 10/25/2013 | 00000158 | APEX CLEAR | 11,924.00 | 15.3% | 00000010 | BROWN BROS | 19,579.21 | 25.1% | 78,049.01 | 100% |
| 38 | 11/22/2013 | 11/25/2013 | 11/25/2013 | 00000158 | APEX CLEAR | 13,066.00 | 15.3% | 00000010 | BROWN BROS | 21,454.37 | 25.1% | 85,524.02 | 100% |
| 39 | 12/24/2013 | 12/25/2013 | 12/26/2013 | 00000158 | APEX CLEAR | 11,970.00 | 15.3% | 00000010 | BROWN BROS | 19,654.74 | 25.1% | 78,350.11 | 100% |
| 40 | 1/24/2014 | 1/25/2014 | 1/27/2014 | 00000158 | APEX CLEAR | 12,258.00 | 15.3% | 00000010 | BROWN BROS | 20,127.64 | 25.1% | 80,235.22 | 100% |
| 41 | 2/24/2014 | 2/25/2014 | 2/25/2014 | 00000158 | APEX CLEAR | 12,166.00 | 15.3% | 00000010 | BROWN BROS | 19,976.57 | 25.1% | 79,633.03 | 100% |
| 42 | 3/24/2014 | 3/25/2014 | 3/25/2014 | 00000158 | APEX CLEAR | 11,698.00 | 15.3% | 00000010 | BROWN BROS | 19,208.12 | 25.1% | 76,569.73 | 100% |
| 43 | 4/24/2014 | 4/25/2014 | 4/25/2014 | 00000158 | APEX CLEAR | 10,908.00 | 15.3% | 00000010 | BROWN BROS | 17,910.94 | 25.1% | 71,398.75 | 100% |
| 44 | 5/23/2014 | 5/25/2014 | 5/27/2014 | 00000158 | APEX CLEAR | 12,510.00 | 15.3% | 00000010 | BROWN BROS | 20,541.42 | 25.1% | 81,884.70 | 100% |
| 45 | 6/24/2014 | 6/25/2014 | 6/25/2014 | 00000158 | APEX CLEAR | 11,364.00 | 15.3% | 00000010 | BROWN BROS | 18,659.69 | 25.1% | 74,383.52 | 100% |
| 46 | 7/24/2014 | 7/25/2014 | 7/25/2014 | 00000158 | APEX CLEAR | 12,578.00 | 15.3% | 00000010 | BROWN BROS | 20,653.08 | 25.1% | 82,329.81 | 100% |
| 47 | 8/22/2014 | 8/25/2014 | 8/25/2014 | 00000158 | APEX CLEAR | 11,716.00 | 15.3% | 00000010 | BROWN BROS | 19,237.67 | 25.1% | 76,687.54 | 100% |
| 48 | 9/24/2014 | 9/25/2014 | 9/25/2014 | 00000158 | APEX CLEAR | 10,744.00 | 15.3% | 00000010 | BROWN BROS | 17,641.65 | 25.1% | 70,325.29 | 100% |
| 49 | 10/24/2014 | 10/25/2014 | 10/27/2014 | 00000158 | APEX CLEAR | 11,046.00 | 15.3% | 00000010 | BROWN BROS | 18,137.53 | 25.1% | 72,302.03 | 100% |
| 50 | 11/24/2014 | 11/25/2014 | 11/25/2014 | 00000158 | APEX CLEAR | 10,172.00 | 15.3% | 00000010 | BROWN BROS | 16,702.42 | 25.1% | 66,581.22 | 100% |
| 51 | 12/24/2014 | 12/25/2014 | 12/26/2014 | 00000158 | APEX CLEAR | 12,946.00 | 15.3% | 00000010 | BROWN BROS | 21,257.33 | 25.1% | 84,738.55 | 100% |
| 52 | 1/23/2015 | 1/25/2015 | 1/26/2015 | 00000158 | APEX CLEAR | 9,958.00 | 15.3% | 00000010 | BROWN BROS | 16,351.04 | 25.1% | 65,180.49 | 100% |
| 53 | 2/24/2015 | 2/25/2015 | 2/25/2015 | 00000158 | APEX CLEAR | 11,430.00 | 15.3% | 00000010 | BROWN BROS | 18,768.06 | 25.1% | 74,815.51 | 100% |
| 54 | 3/24/2015 | 3/25/2015 | 3/25/2015 | 00000158 | APEX CLEAR | 10,800.00 | 15.3% | 00000010 | BROWN BROS | 17,733.60 | 25.1% | 70,691.83 | 100% |
| 55 | 4/24/2015 | 4/25/2015 | 4/27/2015 | 00000158 | APEX CLEAR | 9,506.00 | 15.3% | 00000010 | BROWN BROS | 15,608.85 | 25.1% | 62,221.89 | 100% |
| 56 | 5/22/2015 | 5/25/2015 | 5/26/2015 | 00000158 | APEX CLEAR | 10,058.00 | 15.3% | 00000010 | BROWN BROS | 16,515.24 | 25.1% | 65,835.05 | 100% |
| 57 | 6/24/2015 | 6/25/2015 | 6/25/2015 | 00000158 | APEX CLEAR | 10,088.00 | 15.3% | 00000010 | BROWN BROS | 16,564.50 | 25.1% | 66,031.41 | 100% |
| 58 | 7/24/2015 | 7/25/2015 | 7/27/2015 | 00000158 | APEX CLEAR | 9,224.00 | 15.3% | 00000010 | BROWN BROS | 15,145.81 | 25.1% | 60,376.07 | 100% |

# EXHIBIT 2B

Adv. No. 15-01466-MAM

**Cusip Number 44985FAA1 Tracking Detail**

<u>Source</u>: DTC Data Report allocating monthly interest

| LINE | REC DATE | PAY DATE | ALLOC DATE | PART ID | PART NAME | INTEREST ALLOCATED | ALLOCATION % | PART ID | PART NAME | INTEREST ALLOCATED | ALLOCATION % | TOTAL ALLOCATION | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 5/24/2011 | 5/25/2011 | 5/25/2011 | 00000234 | PENSON | 46,060.00 | 78.0% | | | | | 59,082.86 | 100% |
| 2 | 6/24/2011 | 6/25/2011 | 6/27/2011 | 00000234 | PENSON | 48,080.00 | 78.0% | | | | | 61,673.99 | 100% |
| 3 | 7/22/2011 | 7/25/2011 | 7/25/2011 | | | | | 00000010 | BROWN BROS | 44,484.00 | 78.0% | 57,061.27 | 100% |
| 4 | 8/24/2011 | 8/25/2011 | 8/25/2011 | | | | | 00000221 | UBS FINAN | 43,464.00 | 78.0% | 55,752.88 | 100% |
| 5 | 9/23/2011 | 9/25/2011 | 9/26/2011 | | | | | 00000010 | BROWN BROS | 39,012.00 | 78.0% | 50,042.13 | 100% |
| 6 | 10/24/2011 | 10/25/2011 | 10/25/2011 | | | | | 00005043 | BMO NSBT** | 45,384.00 | 78.0% | 58,215.73 | 100% |
| 7 | 11/23/2011 | 11/25/2011 | 11/25/2011 | | | | | 00005043 | BMO NSBT** | 40,948.00 | 78.0% | 52,525.51 | 100% |
| 8 | 12/23/2011 | 12/25/2011 | 12/27/2011 | | | | | 00005043 | BMO NSBT** | 44,244.00 | 78.0% | 56,753.41 | 100% |
| 9 | 1/24/2012 | 1/25/2012 | 1/25/2012 | | | | | 00005043 | BMO NSBT** | 36,420.00 | 78.0% | 46,717.28 | 100% |
| 10 | 2/24/2012 | 2/25/2012 | 2/27/2012 | | | | | 00005043 | BMO NSBT** | 46,404.00 | 78.0% | 59,524.13 | 100% |
| 11 | 3/23/2012 | 3/25/2012 | 3/26/2012 | | | | | 00005043 | BMO NSBT** | 36,860.00 | 78.0% | 47,281.69 | 100% |
| 12 | 4/24/2012 | 4/25/2012 | 4/25/2012 | | | | | 00005043 | BMO NSBT** | 36,676.00 | 78.0% | 47,045.66 | 100% |
| 13 | 5/24/2012 | 5/25/2012 | 5/25/2012 | | | | | 00005043 | BMO NSBT** | 38,688.00 | 78.0% | 49,626.53 | 100% |
| 14 | 6/22/2012 | 6/25/2012 | 6/25/2012 | | | | | 00005043 | BMO NSBT** | 37,640.00 | 78.0% | 48,282.22 | 100% |
| 15 | 7/24/2012 | 7/25/2012 | 7/25/2012 | | | | | 00005043 | BMO NSBT** | 37,600.00 | 78.0% | 48,230.91 | 100% |
| 16 | 8/24/2012 | 8/25/2012 | 8/27/2012 | | | | | 00005043 | BMO NSBT** | 38,544.00 | 78.0% | 49,441.81 | 100% |
| 17 | 9/24/2012 | 9/25/2012 | 9/25/2012 | | | | | 00005043 | BMO NSBT** | 38,720.00 | 78.0% | 49,667.57 | 100% |
| 18 | 10/24/2012 | 10/25/2012 | 10/25/2012 | | | | | 00005043 | BMO NSBT** | 31,612.00 | 78.0% | 40,549.88 | 100% |
| 19 | 11/23/2012 | 11/25/2012 | 11/26/2012 | | | | | 00005043 | BMO NSBT** | 35,756.00 | 78.0% | 45,865.55 | 100% |
| 20 | 12/24/2012 | 12/25/2012 | 12/26/2012 | | | | | 00005043 | BMO NSBT** | 34,056.00 | 78.0% | 43,684.89 | 100% |
| 21 | 1/24/2013 | 1/25/2013 | 1/25/2013 | | | | | 00005043 | BMO NSBT** | 34,948.00 | 78.0% | 44,829.09 | 100% |
| 22 | 2/22/2013 | 2/25/2013 | 2/25/2013 | | | | | 00005043 | BMO NSBT** | 36,568.00 | 78.0% | 46,907.12 | 100% |
| 23 | 3/22/2013 | 3/25/2013 | 3/25/2013 | | | | | 00005043 | BMO NSBT** | 31,624.00 | 78.0% | 40,565.27 | 100% |
| 24 | 4/24/2013 | 4/25/2013 | 4/25/2013 | | | | | 00000010 | BROWN BROS | 31,988.00 | 78.0% | 41,032.19 | 100% |
| 25 | 5/24/2013 | 5/25/2013 | 5/28/2013 | | | | | 00000010 | BROWN BROS | 31,188.00 | 78.0% | 40,006.00 | 100% |
| 26 | 6/24/2013 | 6/25/2013 | 6/25/2013 | | | | | 00000010 | BROWN BROS | 37,152.00 | 78.0% | 47,656.24 | 100% |
| 27 | 7/24/2013 | 7/25/2013 | 7/25/2013 | | | | | 00000010 | BROWN BROS | 30,272.00 | 78.0% | 38,831.01 | 100% |
| 28 | 8/23/2013 | 8/25/2013 | 8/26/2013 | | | | | 00000010 | BROWN BROS | 31,272.00 | 78.0% | 40,113.75 | 100% |
| 29 | 9/24/2013 | 9/25/2013 | 9/25/2013 | | | | | 00000010 | BROWN BROS | 30,716.00 | 78.0% | 39,400.55 | 100% |
| 30 | 10/24/2013 | 10/25/2013 | 10/25/2013 | | | | | 00000010 | BROWN BROS | 28,240.00 | 78.0% | 36,224.49 | 100% |
| 31 | 11/22/2013 | 11/25/2013 | 11/25/2013 | | | | | 00000010 | BROWN BROS | 31,580.00 | 78.0% | 40,508.84 | 100% |
| 32 | 12/24/2013 | 12/25/2013 | 12/26/2013 | | | | | 00000010 | BROWN BROS | 30,308.00 | 78.0% | 38,877.19 | 100% |
| 33 | 1/24/2014 | 1/25/2014 | 1/27/2014 | | | | | 00000010 | BROWN BROS | 27,520.00 | 78.0% | 35,300.92 | 100% |
| 34 | 2/24/2014 | 2/25/2014 | 2/25/2014 | | | | | 00000010 | BROWN BROS | 30,112.00 | 78.0% | 38,625.77 | 100% |
| 35 | 3/24/2014 | 3/25/2014 | 3/25/2014 | | | | | 00000010 | BROWN BROS | 27,408.00 | 78.0% | 35,157.25 | 100% |
| 36 | 4/24/2014 | 4/25/2014 | 4/25/2014 | | | | | 00000010 | BROWN BROS | 26,256.00 | 78.0% | 33,679.54 | 100% |
| 37 | 5/23/2014 | 5/25/2014 | 5/27/2014 | | | | | 00000010 | BROWN BROS | 29,332.00 | 78.0% | 37,625.24 | 100% |
| 38 | 6/24/2014 | 6/25/2014 | 6/25/2014 | | | | | 00000010 | BROWN BROS | 25,060.00 | 78.0% | 32,145.39 | 100% |
| 39 | 7/24/2014 | 7/25/2014 | 7/25/2014 | | | | | 00000010 | BROWN BROS | 26,120.00 | 78.0% | 33,505.09 | 100% |
| 40 | 8/22/2014 | 8/25/2014 | 8/25/2014 | | | | | 00000010 | BROWN BROS | 31,196.00 | 78.0% | 40,016.26 | 100% |
| 41 | 9/24/2014 | 9/25/2014 | 9/25/2014 | | | | | 00000010 | BROWN BROS | 27,392.00 | 78.0% | 35,136.73 | 100% |
| 42 | 10/24/2014 | 10/25/2014 | 10/27/2014 | | | | | 00000010 | BROWN BROS | 24,312.00 | 78.0% | 31,185.90 | 100% |
| 43 | 11/24/2014 | 11/25/2014 | 11/25/2014 | | | | | 00000010 | BROWN BROS | 25,884.00 | 78.0% | 33,202.36 | 100% |
| 44 | 12/24/2014 | 12/25/2014 | 12/26/2014 | | | | | 00000010 | BROWN BROS | 25,624.00 | 78.0% | 32,868.85 | 100% |
| 45 | 1/23/2015 | 1/25/2015 | 1/26/2015 | | | | | 00000010 | BROWN BROS | 23,408.00 | 78.0% | 30,026.31 | 100% |
| 46 | 2/24/2015 | 2/25/2015 | 2/25/2015 | | | | | 00000010 | BROWN BROS | 25,184.00 | 78.0% | 32,304.45 | 100% |
| 47 | 3/24/2015 | 3/25/2015 | 3/25/2015 | | | | | 00000010 | BROWN BROS | 23,728.00 | 78.0% | 30,436.78 | 100% |
| 48 | 4/24/2015 | 4/25/2015 | 4/27/2015 | | | | | 00000010 | BROWN BROS | 21,632.00 | 78.0% | 27,748.17 | 100% |
| 49 | 5/22/2015 | 5/25/2015 | 5/26/2015 | | | | | 00000010 | BROWN BROS | 25,564.00 | 78.0% | 32,791.89 | 100% |
| 50 | 6/24/2015 | 6/25/2015 | 6/25/2015 | | | | | 00000010 | BROWN BROS | 21,676.00 | 78.0% | 27,804.61 | 100% |
| 51 | 7/24/2015 | 7/25/2015 | 7/27/2015 | | | | | 00000010 | BROWN BROS | 22,216.00 | 78.0% | 28,497.28 | 100% |

# Mailing Information for Case 15-01466-MAM

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Roy S Kobert**    roy.kobert@gray-robinson.com, ellen.beckwith@gray-robinson.com
- **Steven S Newburgh**    snewburgh@lubellrosen.com, joann@lubellrosen.com;ssn@newburghlaw.net;paula@lubellrosen.com
- **Patricia A Redmond**    predmond@stearnsweaver.com, jmartinez@stearnsweaver.com;cgraver@stearnsweaver.com;jless@stearnsweaver.com;mfernandez@stearnsweaver.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

> **ABC Companies #1-100**
> ,
>
> **Aishwariya Enterprises, Inc.**
> c/o Vivek Chandrahasan
> 2533 N Carson St.
> Carson City, NV 89706
>
> **Alberminster House**
> Alberminster House 38-40
> Sydenham Road
> Croydon Surrey, CRO 2EF UK
>
> **Andrew Berrones & Benjamin Penfield**
> 2349 Pacheco Dr
> Merced, CA 95340
>
> **Angelo Gordon & Co**
> Attn: Michael Gordon
> 245 Park Ave
> New York, NY 10167

**Kamang Anstalt**
Gardenia Stree, Lynnwood Ridge
Pretoria Gauteng,

**BAWA Financial, Ltd.**
c/o Hunter House
109 Snakes Lane West
Woodford Green Essex
IG8 0DY, UK

**Leonard Beaulieu**
2659 Pressburg St
New Orleans, LA 70122

**Rafal Brenner**
19 Cromwell Terrace
Chatham Kent
ME4 59K, UK

**Cede and Co**
365 Canal St #3A
New York, NY 10013

**Theresa Anne Chabot**
175 Hutton Ranch Rd #103
Pmb 180
Kalispell, MT 59901

**Vivek Chandrahasan**
1191 Huntington Dr #305
Duarte, CA 91010

**Daniel Dirk Coddington**
3578 Hartsel Drive
Unit E-339
Colorado Springs, CO 80920

**Daniel Scott Coddington**
3578 Hartsel Dr Unit 339
Colorado Springs, CO 80920

**Coddington Family Trust**
Attn: Daniel D. Coddington
13181 Penfold Dr
Colorado Springs, CO 80921

**Joanna I. Columbia**
7047 E. Greenway Parkway #250
Scottsdale, AZ 85251

**Michael Columbia**
77498-308
RRM Phoenix
230 N. First Ave., Suite 405
Phoenix, AZ 85003

**Ron Cornforth**
43 Coniscliffe Rd
Darlington,

**Sandra Josefa Deleon**
109 Snakes Lane West
Woodford Green, Essex,

**Dominick Investors Services Corp.**
c/o C T Corporation System, RA
400 Cornerstone Dr. #240
Williston, VT 05495

**Eastwest Fincon LTD**
c/o Ashleigh Mann
79 College Road
Harrow Middlesex
HA1 1BD, UK

**Jesse Erwin**
1745 Broadway Suite 1700
New York, NY 10019

**Erwin Law Group, P.C.**
1745 Broadway Suite 1700

New York, NY 10019

**Extreme Capital, LTD**
c/o Daniel D Coddington
900 Alan Shepard St
Las Vegas, NV 89145

**Vincent G. Farris**
P.O. Box 671555
Cuyahoga Falls, OH 44222

**David Genecco**
3824 E Lake Rd
Canandaigua, NY 14424

**Golden Summit Investors Group, LTD**
c/o Daniel D Coddington
13181 Penfold Dr
Colorado Springs, CO 80921

**Robert Harvey**
1010 Franklin Ave #300B
Garden City, NY 11530

**R. Hibsham**
1050 E 2nd St #125
Edmond, OK 73034

**Highland Investment Partners, LLC**
c/o Bart Dalton, Esq
2001 Ross AVe #4400
Dallas, TX 75201

**Iota Management LLC**
16526 Westgrove Dr.
Addison, TX 75001

**J-Hawk II Ltd**
c/o James R Hawkins
POB 21446
Waco, TX 76702

**J.R. Richardson Investments**
c/o Jimmy L. Richardson
1228 W Roseburg Ave #D
Modesto, CA 95350

**Jane Does #1-100**
,

**John Does #1-100**
,

**KBA Assets and Acquistions LLC**
731 E. Yosmite Ave., Suite B115
Merced, CA 95340

**Susann Kim**
227 Bellevue Way NE #387
Bellevue, WA 98004

**L2M Ventures LP**
Attn: Leland Stahelin and Michael Stahel
800 Roosevelt Rd BLvd A-120
Glen Ellyn, IL 60137

**Seth Leyton**
2538 Aaron Ct
San Diego, CA 92105

**MGE Corporation Limited**
Attn: Stephen Leslie Miller
20-22 Wenlock Rd
London, England,, N1 7GU

**Magic Financial Group, Inc**
Attn: Ramon Nunez
501 Marllo Rd
Kissimee, FL 34744

**Lewis P. Malouf**
20902 Mission Lane

Huntington Beach, FL 92646

**Mary-Ruth, LLC**
Att: David L. Genecco
3824 E. Lake Road
Canandaigua, NY 14424

**Glen McInerney**
,

**Mykael Morgan**
8305 Delicato Way
Sacramento, CA 95829

**James Morrison**
707 Pleasant Valley Dr #7
Little Rock, AR 72227

**John Andres Morrison**
19 Cromwell Terrace
Chatham Kent, ME4 59K

**NFS/FMTC Rollover IRA**
c/o Richard V Botthof
462 Founders Park Dr E
Hoover, AL 35226

**NFS/FMTC SEP ERA**
FBO Kirby Pearson
2456 N Greenview Ave
Chicago, IL 60614

**National Securities Corporation**
2101 4th Ave., Suite 910
Seattle, WA 98121

**Andrew F. Newman**
Clark Hill
901 Main St #6000
Dallas, TX 75202

**Ramon Nunez**
c/o Silvia Benavides Ten Ent
501 Marllo Rd
Kissimee, FL 34744

**Shawn O'Keefe**
c/o The Shawn O'Keefe Living Trust
5 Vanderbergh Dr
South Barrington, IL 60010

**Joanna I. Ornowska**
8030 E Monterey Way
Scottsdale, AZ 85251

**Suzy Peraza**
c/o Peraza Capital & Investment LLC
29 Hillside Terr
Basking Ridge, NJ 07920-1741

**Jimmy L. Richardson**
1228 W Roseburg Ave #D
Modesto, CA 95350

**Ian Russell**
c/o Hunter House
109 Snakes Lane West
Woodford Green Essex
1G8 0DY, UK

**Leclair Ryan**
2318 Mill Rd, Suite 110
Alexandria, VA 22314

**Scott Sebastian**
Attn: Kimberly Sebastian
9300 W 47 St
Brookfield, IL 60513

**Paul Sherman**
International House
12 Constance St.

London
E16 2DQ, UK

**Southern Trust Securities, Inc**
Attn: Robert J Escobio
1141 Palermo Ave
Coral Gables, FL 33134

**Sterling Trust Company**
7901 Fish Pond Rd.
Waco, TX 76710

**Steven Safran TTEE**
c/o Safan Metals PS
1685 N Elston Ave
Chicago, IL 60642

**Greg Stodgill**
202 E. John St.
Fort Branch, IN 47648

**Stonerock Capital Group, LLC**
77498-308
RRM Phoenix
230 N. First Ave., Suite 405
Phoenix, AZ 85003

**Synovus Securities Inc RB**
800 Shades Creek Pkwy #100
Birmingham, AL 35209

**Vfinance Investments Inc**
c/o Corporation Service Co., RA
1201 Hays Street
Tallahassee, FL 32301

**Viewpoint Securities, LLC**
c/o Seth Leyton
2538 Aaron Ct.
San Diego, CA 92105

**Vincent G. Farris Co., L.P.A.**
c/o Vincent G Farris
P.O. Box 671555
Cuyahoga Falls, OH 44222

**Michael Wienckowski**
13814 Bella Riv Ln
Jacksonville, FL 32225

**Renee Wienckowski**
13814 Bella Riva Ln
Jacksonville, FL 32225

**Wilshire Associates, Inc.**
Attn: Dennis A Tito
1299 Ocean Ave, Suite 700
Santa Monica, CA 90401

**Stacy M Win**
1119 N Victoria Park Rd #3
Ft Lauderdale, FL 33304

**Wunderlich Securities Inc Fixed Income Capital Markets MBS Book**
Fixed Income Capital Markets
Attn: Gary Wunderlich
299 Park Ave., FL 12
New York, NY 10171