
# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

**In re:**                                **CASE NO. 12-32119-MAM**

**JOHN MARK MARINO, a/k/a**

**RONALD M. HUNTER,**

        Debtor.

_____/

**MARGARET J. SMITH, not individually but**

**as Chapter 7 Trustee of the Estate of Debtor,**

**John Mark Marino, a/k/a/ Ronald M. Hunter,**

        Plaintiff,

vs.                                     **ADV NO. 15-01466-MAM**

**GOLDEN SUMMIT INVESTORS GROUP,**
**LTD., EXTREME CAPITAL, LTD,**
**CODDINGTON FAMILY TRUST, DANIEL**
**DIRK CODDINGTON, individually,**
**DANIEL SCOTT CODDINGTON, individually,**
**LEWIS P. MALOUF, individually,**
**MARY-RUTH, LLC, DAVID GENECCO,**
**Individually, HIGHLAND**
**INVESTMENT PARTNERS, LLC,**
**AISHWARIYA ENTERPRISES,INC.,**
**VIVEK CHANDRAHASAN, individually,**
**VIEWPOINT SECURITIES, LLC,**
**SETH LEYTON, individually, ERWIN LAW**
**GROUP, P.C., JESSE ERWIN, individually,**
**STONEROCK CAPITAL GROUP, LLC,**
**MICHAEL COLUMBIA, individually, JOANNA I.**

**COLUMBIA (A/K/A JOANNA I. ORNOWSKA),**

**Individually, J.R. RICHARDSON INVESTMENTS,**

**JIMMY L. RICHARDSON, individually,**

**WILSHIRE ASSOCIATES, INC.,**

**FSC SECURITIES CORP.,**

**DOMINICK INVESTORS SERVICES, CORP.,**

**BMO NESBITT BURNS, RJ STEICHEN &**

**CO., BAWA FINANCIAL LTD., JOHN ANDREAS**

**MORRISON, individually, PAUL SHERMAN**

**Individually, RAFAL BRENNER,**

**individually, SANDRA JOSEFA DELEON,**

**individually,**

**MYKAEL MORGAN, individually, RON CORNFORTH,**

**Individually, VINCENT G. FARRIS CO., L.P.A.,**

**VINCENT G. FARRIS, individually, GREG STODGILL,**

**Individually, IAN Russell, individually,**

**JOHN DOES #1-100, JANE DOES #1-100,**

**AND ABC COMPANIES #1-100,**

      Defendants.

_____/

## CHAPTER 7 TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT X OF THE SECOND AMENDED COMPLAINT (Doc. 499)

(*Affected Defendants: Taylor Wilson, individually and as last surviving member of 7608845 Canada Corp., a dissolved Ontario Corporation*)

Plaintiff, MARGARET J. SMITH, not individually, but in her capacity as the duly appointed Chapter 7 Trustee **("Trustee")** pursuant to Bankruptcy Rule 7056, 11 U.S.C. sec. 544, 548 and 550 files this, her *Motion for Partial Summary Judgment, as to Count X of the Second Amended Complaint* and in support thereof would state as follows:

2

## I. OVERVIEW

1. This adversary proceeding has a tortured history over the past decade with only 600 docket entries, including no docket entries during calendar year 2025. *It's time.* It's time to conclude this adversary proceeding. The Targeted CMO's (defined herein) represent the final CMO assets uncovered by the Trustee to be monetized for the benefit of the creditors and the legitimate victims of the underlying fraud.

## II. BACKGROUND

2. On September 17, 2012, the Debtor filed a voluntary petition under Chapter 7. Ultimately, the Debtor's discharge was revoked pursuant to 11 U.S.C. sec 727 based on an action prosecuted by the Trustee. (Adv. Case No. 13-01536-PGH).

3. Nearly a decade ago, on July 17, 2015, the Trustee filed this instant adversary proceeding. On August 5, 2022, the Trustee filed a Second Amended Adversary Complaint (Doc. 499), which joined Taylor Wilson **("Taylor")** and 7608845 Canada Corp. **("Canada")** as Defendants. At issue in these proceedings are 2 CMOs with CUSIP Nos. **462264AA0** and **44985FAA1** and the proceeds thereof **("the Targeted CMOs")** currently held in a single account (Account # 230-37353) **("Targeted Account")** at BMO (defined herein) along with all proceeds, including interest and stock or other trades made in the Account.

4. Very early on, the Trustee was able to remove a companion action from Texas Bankruptcy Court with the consent of Hon. Barbara J. Houser (ret.) thereby securing ownership rights to the entire panoply of Collateralized Mortgage Obligations **("CMOs")**. Specifically, on September 2, 2016, by entry of a *Default Final Judgment* entered by former Chief Judge Paul Hyman (Case No. 15-01330-PGH) an adjudication was made that this bankruptcy estate owned the Targeted CMOs, which ultimately ended up in the subject Account.

5. On July 30, 2020, the Trustee obtained a Restraining Order (Doc. 459) enjoining BMO Nesbitt Burns **("BMO")** a wholly owned subsidiary of Bank of Montreal from further

transferring CUSIP No. 462264AAO containing 3,284,000,000 units and CUSIP No. 44985FAA1 containing 4,000,000,000 units (previously described as the Targeted CMOs); and (iii) further enjoining BMO from transferring any cash balances or accumulated interest thereon related to the Targeted Account generated from the Targeted CMOs.

6. Next, the Trustee sought to identify and locate the beneficial owners of the subject investment vehicles. As evidenced from the exhibits *supra*, the Targeted CMOs were bounced from one brokerage house to another to knowingly frustrate the efforts of the Trustee to subsequently freeze the Targeted CMOs and the resulting interest payments they produce on a monthly basis. When the Targeted CMOs sat the last known Clearing House, in this case BMO, the Restraining Order served its intended purpose.

7. Upon review of the responses to discovery responses, it became clear that Taylor and Canada are the beneficial owners of the Targeted CMOs now in the Targeted Account which were incorporated in Count X of the Second Amended Adversary Complaint.

8. In response to a series of subpoenas issued by this Court, BMO has produced monthly statements for the Targeted Account, has dutifully complied with Orders of this Court and continues to hold the Targeted CMO's along with the accumulated monthly interest and resulting assets, awaiting further instructions from this Court.

9. The Targeted CMOs were located at BMO and traced back to the underlying fraud in order to claw back the ill-gotten funds, interest thereon and any other non-fungible assets. (See para 64 of 2nd Amended Complaint.)

10. **Exhibit 1** to the Second Amended Complaint (Doc. 499) is a CMO Movement Timeline compiled from discovery received from both the Depository Trust & Clearing Corporation ("DTC") which tracks the movement of the Targeted CMOs. Each transfer shown in the Movement Timeline corresponds with the underlying data and evidence under the "Comments") section of the Movement Timeline, where the exact data can be located within a particular exhibit. (See para 65 of 2nd Amended Complaint.)

11.     **Exhibits 1A, 1B and 1C and 1D** to the Second Amended Complaint (Doc. 499) are the Golden Summit and BAWA Statements of Account from Viewpoint Securities (Penson) showing the movement of the Targeted CMOs. (See para 66-68 of 2nd Amended Complaint.) These entities were the subject of the initial prosecution in Adv. Case No. 15-01330-PGH.

12.     **Exhibit 2A and Exhibit 2B** to the Second Amended Complaint (Doc. 499) is the Tracking Detail compiled from data provided to the Trustee by the DTC detailing the movement of the Targeted CMOs. (See para 69 of 2nd Amended Complaint.)

13.     **Exhibit 3** to the Second Amended Complaint (Doc. 499) is a demonstrative exhibit in which the DTC data was extracted from the prior exhibits. (See para 70 of 2nd Amended Complaint.)

## III. DUE PROCESS

14.     Nearly 2 years ago, the Trustee engaged a process server to obtain jurisdiction over Taylor and Canada (i) by USPS, (ii) Certified Mail (iii) as well as under the Hague's Central Authority guidelines for international service of process in the Province of Quebec, Ontario, Canada. Taylor and Canada are believed to have received copies of the Summonses and Complaint via U.S. Mail and Registered Mail. In fact, despite numerous mailings generated by these proceedings, no item of U.S. Mail has ever been returned as "Not at This Address" nor have any items served by Registered Mail been returned as "Unclaimed" with the Clerk of the Court nor with attorney Newburgh.

15.     While strict service of process under the Hague Convention has proven to be ineffective in this case—it is *NOT* fatal. Service through the central authority of the destination state is just *one* way to effectuate service under the Hague Service Convention, but not the only way. Article 10(a) of the Hague Service Convention explicitly provides that, if [Canada] does not object, the Hague Convention does not change the freedom to send judicial documents, by postal channels, directly to persons abroad. Canada does not object. Service by mail to Canadiens of bankruptcy court documents is appropriate.

5

## IV. **LEGAL ARGUMENT**

16. Due process requires that persons whose property interests are at risk due to government action receive notice and an opportunity to be heard. *Thomas v. United States, 681 Fed. Appx. 787, 790 (11th Cir. 2017)*. The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*, (citing *Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)*.

17. For service outside the United States, the initial inquiry is how to effectuate appropriate service. The transmittal of documents for service abroad must be made pursuant to the provisions of the Hague Service Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988)*.

18. However, there is a workaround. Whether to invoke the tortured approach of the Hague Convention, depends in great part on the foreign country itself. Here, we are dealing with our neighbor to the North: Canada. So, the question is, can bankruptcy documents be served by mail on Canadiens pursuant to the exception contained in Article 10(a) of the Hague Service Convention?

19. The answer is in the affirmative.

20. "If the State of destination [Canada] does not object, the Hague Convention does not change the freedom to send judicial documents, by postal channels, directly to persons abroad." *TracFone Wireless, Inc. v. Sunstrike Intern., Ltd., 273 F.R.D. 697, 699 (S.D. Fla. 2011)* (citing *TracFone Wireless, Inc. v. Bequator Corp., Ltd., 717 F. Supp. 2d 1307, 1309 (S.D. Fla. 2010)*. "[T]he United States and Canada are both signatories to the [Hague Service] Convention. [1969] 20 U.S.T. 361, T.I.A.S. No. 6638, the terms which govern such cross-border service of process are set forth thereunder." *Jerge v. Potter, No. 99-CV-0312E(F), 2000 U.S. Dist. LEXIS 11648, 2000 WL 1160459, \*1 (W.D.N.Y. Aug. 11, 2000)*.

6

21. Canada does not object to Article 10(a) and, accordingly, permits service by international express mail. *See, e.g., Girafa.com, Inc. v. Smartdevil Inc., 728 F. Supp. 2d 537, 543 (D. Del. 2010)* ("Under Article 10 of the Hague Convention, Canada does not object to service by postal channels."); *McCormick v. Apache, Inc., No. 5:09CV49, 2009 U.S. Dist. LEXIS 84181, 2009 WL 2985470, *2 (N.D. W.Va. Sept. 15, 2009)* ("Canada, the destination country in this case, does not object to service under Article 10."); *Anderson v. Canarail, Inc., No. 05 CV 3828, 2005 U.S. Dist. LEXIS 22544, 2005 WL 2454072,* 4 (S.D.N.Y. Oct. 6, 2005)* (Hague Convention allows service by mail in Canada); *Sibley v. Alcan, Inc., 400 F. Supp. 2d 1051, 1055 (N.D. Ohio 2005)* ("service of process by registered mail ... to a Canadian defendant is permitted by Article 10(a)"); *Dimensional Communications, Inc., v. Oz Optics Ltd., 218 F. Supp. 2d 653, 656 (D. N.J. 2002)* (finding Canada allows methods of service in Article 10 of the Convention); *See also*, State Department circular, *http://travel.state.gov/law/judicial/judicial-682.html*, (stating "The last direct method of serving U.S. legal documents in Canada is by International Registered Mail. The text of the Hague Service Convention refers to "judicial documents."

22. Even the late Bankruptcy Chief Judge A.J. Cristol, when considering service of court documents by mail in *In re Falcon Air Exp., Inc., No. 06-11877-BKC-AJC, 2008 Bankr. LEXIS 1463, 2008 WL 2038799, *4 (Bkrtcy. S.D. Fla. May 8, 2008)* held that service was sufficient where it "was reasonably calculated to insure receipt of the subpoena by the witness."

23. Any confusion over service by mail under the Hague Service Convention was finally put to rest by the Supreme Court in *Water Splash v. Tara Menon 137 S. Ct. 1504 (2017).* Water Splash involved the service of Texas state court papers on Menon via mail, while she resided in Quebec, Canada. Justice Alito wrote the opinion for a unanimous Court which concluded by stating, "To be clear, this [holding] does not mean that the Convention affirmatively authorizes service by mail. Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not 'interfere with… the freedom' to serve documents through postal channels. In other words,

service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law."

24. To be clear, States may still object to service by mail. By example, Germany does not permit service by mail and that remains unchanged post *Water Splash.* But for Canada, service by mail remains appropriate.

## V. CONCLUSION

25. It is certain that Taylor Wilson is fully-aware of these proceedings and that the cash proceeds from the Targeted CROs in the Targeted Account, previously frozen by this Court, continue to be held by BMO. Taylor Wilson, as an individual, and as the last surviving member of 7608845 Canada Corp., a dissolved Ontario Corporation should be divested of the ill-gotten assets in the Targeted Account.

**WHEREFORE**, Plaintiff, Margaret J. Smith, Chapter 7 Trustee, respectfully requests relief as follows:

A. Recognition that service by U.S. and Registered mail in combination with DHL/overnight mail is sufficient service on Taylor Wilson, individually and as last surviving member of 7608845 Canada Corp, under Article 10(a) of the Hague Convention with specific application on service of process in Canada;

B. Confirmation that this Court has competent jurisdiction as it has a real and substantial connection to the subject matter and the parties involved;

C. Granting Partial Summary Judgment as to Count X of the Second Amended Complaint in favor of the Trustee and against Taylor Wilson, an individual, and in his corporate capacity as the last surviving member of 7608845 Canada Corp., a dissolved Ontario Corporation;

D. Converting the July 30, 2020, Restraining Order (Doc. 459) into a permanent injunction by way of a final judgment thereby determining that all assets in the Account held by BMO are property of this bankruptcy estate more particularly described as the Targeted

Account, along with all non-cash assets, cash balances and accumulated interest thereon, which are all subject to turnover to the Trustee;

E. Providing *in rem* relief only as it relates to the Targeted Account;

F. Permit the Trustee to domesticate this Court's final judgment as a foreign judgment in Canada so that it will be granted full faith and credit as a duly issued Canadian judgment;

G. Following complete domestication in Canada, authorizing the Trustee to direct all aspects of the timing and terms to liquidate stock and other non-cash investment assets in the Targeted Account at BMO; and

H. such other and further relief as may be just and proper

Respectfully submitted,

*/s/ Roy S. Kobert*
Fla. Bar No. 0777153
Roy Kobert Law, PLLC
408 Jennie Jewel Drive
Orlando, FL 32806
*Special Counsel for Chapter 7 Trustee,*
*Margaret J. Smith*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served on June 30, 2025, by electronic transmission via the Court's CM/ECF system and by First Class, USPS International Registered Mail and DHL/UPS Express Package to Defendants, Taylor Wilson and 7608845 Canada Corp. at the addresses listed below.

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case or require a courtesy copy

- **Roy S Kobert**    roykobertlaw@gmail.com, roy@kobertmediation.com
- **Charlie Lembcke**  cbl@cbllaw.com
- **Ronald Schindler**  RShindler@fowler-white.com
- **Steven S Newburgh**    ssn@newburghlaw.net, cmecf@newburghlaw.net
- **Patricia A Redmond**    predmond@stearnsweaver.com, jmartinez@stearnsweaver.com;cgraver@stearnsweaver.com;jless@stearnsweaver.com;mfernandez@stearnsweaver.com

- **Eyal Berger**  eyal.berger@akerman.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service in the form as indicated above):

**7608845 Canada Corp, a dissolved Ontario Corp**
c/o Taylor Wilson
208-264 Seaton St
Toronto, ON M5A-2T4

**Taylor Wilson**
208-264 Seaton St
Toronto, ON M5A-2T4

                                             */s/ Roy S. Kobert*

                                             ROY S. KOBERT, ESQ.
                                             Fla. Bar No. 0777153